**Willie X. ROSS, Petitioner-Appellant,**

v.

**Ralph KEMP, Respondent-Appellee.**

No. 82–8413.

United States Court of Appeals,
Eleventh Circuit.

March 20, 1986.

John Charles Boger, Jack Greenberg, James M. Nabrit, III, Joel Berger, Deborah Fins, James S. Liebman, Deval L. Patrick, New York City, Timothy K. Ford, Seattle, Wash., for petitioner-appellant.

Jan Hildebrand, Mary Beth Westmoreland, Atlanta, Ga., for respondent-appellee.

Before KRAVITCH and JOHNSON, Circuit Judges, and LYNNE *, Senior District Judge.

KRAVITCH, Circuit Judge:

The principal issue before this panel is whether appellant Ross should be allowed to submit additional evidence to this court after issuance of a panel opinion and scheduling of en banc argument. The issue was presented the day preceding en banc rehearing of the case, by Ross' motion to supplement the record with affidavits based on information obtained by attorneys in an unrelated case. Subsequent to the filing of the motion, and en banc argument, the court affirmed the district court's denial of federal habeas corpus relief on all grounds except the one relating to the motion to supplement the record. *Ross v. Kemp*, 756 F.2d 1483 (11th Cir.1985) (en banc). The en banc court did not address the motion, but remanded the case to this panel for consideration of the motion and reconsideration of Ross' claim of unconstitutional jury composition. *Id.* at 1494.

## I. BACKGROUND

Appellant Ross, a black male, was convicted of the murder of a white policeman, armed robbery, and kidnapping,[1] and sentenced to death by an all white and all male jury on March 13, 1974. The Georgia Supreme Court affirmed his conviction and sentence on direct appeal. *Ross v. State*, 233 Ga. 361, 211 S.E.2d 356 (1974), *cert. denied*, 428 U.S. 910, 96 S.Ct. 3222, 49 L.Ed.2d 1217 (1976). In 1976, Ross filed in state court a petition for habeas corpus relief consisting of twenty-one claims, including an allegation that the grand jury which indicted him and the traverse jury which convicted and sentenced him were selected through procedures that systematically excluded blacks and women in violation of the sixth and fourteenth amendments. At the state court hearing, Ross' attorney, Herbert Phipps,[2] explained that when he had gone to the office of the Colquitt County clerk and requested the 1973 jury lists from which the jury venires for 1974, the year in which Ross was indict-

---

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. The en banc opinion sets forth the facts of the offenses of which Ross was convicted and the other sentences imposed, 756 F.2d at 1484–85, as well as the procedural history of the case.

*Id.* at 1484. We therefore limit this opinion on remand to the facts and proceedings relevant to the motion to supplement the record.

2. Phipps did not begin representing Ross until the post-trial phase.

ed and tried, had been picked, the clerk told him that the lists had been destroyed. Phipps also filed an affidavit, dated October 13, 1976 (Exhibit F state habeas petition), with the state court averring that although the 1973 Colquitt County jury lists were no longer available, he had personally examined the lists in connection with other cases he had handled since 1971 and had found unconstitutional underrepresentation of blacks and women. The state habeas court rejected the merits of Ross' jury composition claim due to lack of evidence. The Georgia Supreme Court affirmed, stating it had fully considered all of Ross' contentions but found that he was fairly tried and convicted. *Ross v. Hopper,* 240 Ga. 369, 240 S.E.2d 850, 853 (1977), *cert. denied,* 435 U.S. 1018, 98 S.Ct. 1890, 56 L.Ed.2d 397 (1978).

In 1978, Ross filed a petition for federal habeas corpus relief, raising twelve claims, again including an allegation of unconstitutional jury composition, and requested an evidentiary hearing. In December, 1979, after the court granted his motion for discovery, Ross subpoenaed and deposed both the county clerk, Wilbur Murphy, who was custodian of the records, and a former member of the jury commission, Thomas Norman.[3] Murphy testified that the jury commissioners revised the lists every two years and that his office kept the one copy of the current jury lists but discarded the old lists when the new ones were completed. He explained that was why he did not have any of the lists from 1970 through 1974. Murphy also stated that the commissioners revised the lists earlier than usual in 1977 in anticipation of an upcoming criminal drug case. He testified that he did not know why the trial judge ordered the early revision, that he believed it was just to make sure the lists were proper, and that he was not aware of any party having requested the revision. Murphy produced no documents in response to the subpoena

seeking the jury lists from 1970 through 1974 and other documents identifying the race or sex of jury members in those years, but provided the 1975 and 1977 lists stating they were the only ones he had. Norman testified that the clerk was the sole custodian of the lists and that none of the jury commissioners ever had in his or her possession the entire lists, but only the portions containing the geographic area for which that commissioner was responsible and which were always returned to the clerk. He explained that the jury commissioners started afresh each time they revised the jury lists and did not simply amend the old lists. Norman corroborated Murphy's testimony as to the selection procedures. He added that the early 1977 revision was aimed at getting a closer percentage according to race and sex, and resulted in an increase of women and blacks on the lists although he could not make an accurate estimate as to the degree of increase since 1973 because he did not have the 1973 lists and could not recall the percentage of blacks or women on those lists. He stated that his best guess was that the judge ordered the early revision. Norman did not produce any documents in response to his subpoena which requested the same documents as Murphy's subpoena.

Following the depositions, Ross filed a renewed motion for an evidentiary hearing with a supporting legal memorandum arguing that the discovery depositions revealed significant new evidence on his jury claim entitling him to a hearing. At the court's request, Ross subsequently joined in a consolidated legal memorandum supporting his motion for a hearing with two petitioners in unrelated habeas cases, addressing five common constitutional claims. On January 26 and 27, 1981, the district court held a consolidated hearing to determine what evidence the three petitioners could present and added the jury challenges to the list of

---

**3.** Mr. Norman was a member of the jury commission in Colquitt County for several years including the time period during which the jury lists and venires for Ross' juries were created. Mr. Murphy was the clerk of the jury commis-

sioners at the time of his 1979 deposition and apparently had been since 1965 so that he, too, had been in office during the time period relevant to Ross' claim.

common claims. The petitioners' joint evidence consisted of studies showing the unique harm that capital defendants experience when blacks and women are excluded from their juries because members of these two groups are statistically less likely to vote for the death penalty. As a result of the January hearing, the parties understood that the court had limited the evidence which the petitioners could present individually on the jury claims at the May 1981 hearing to showings of cause and prejudice.

After the hearings, the district court denied Ross' petition for habeas corpus. It held that Ross had had a full and fair opportunity to present his jury claim to the state court and had not overcome the presumption of correctness accorded state court findings in federal habeas proceedings under 28 U.S.C. § 2254(d). *Ross v. Hopper*, 538 F.Supp. 105 (S.D.Ga.1982).[4] This panel of the court of appeals affirmed the district court's denial on this ground as well as other grounds. *Ross v. Hopper*, 716 F.2d 1528, 1537–39 (11th Cir.1983). The full court subsequently granted Ross' motion for rehearing en banc, 729 F.2d 1293, and scheduled oral argument for June 12, 1984.

**4.** The district court's first opinion denying Ross relief on his jury composition claim held that Ross had waived the claim because he had not satisfied the state requirement that grand jury composition challenges be made prior to indictment and traverse jury composition challenges be made when the jury array is put upon the defendant, nor had he made an adequate showing of cause and prejudice to overcome the default. *Mitchell v. Hopper*, 538 F.Supp. 77, 94–97 (S.D.Ga.1982). The district court resolved the three petitioners' claims with the same legal analysis relying on *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). As Ross pointed out in his motion to the district court to alter or amend judgment, this was an erroneous legal conclusion on the facts of his case because the amended version of the state statute on which the district court relied (Ga.Code Ann. § 50–127(1)) was not in effect at the time of Ross' trial and the law that was in effect at the time of trial permitted Ross to raise the jury composition claim for the first time in collateral state proceedings. In addition, Ross argued that because the state court had addressed the merits

## II. THE MOTION TO SUPPLEMENT THE RECORD

On June 11, 1984, appellant Ross filed a motion to supplement the record of his habeas petition with four documents, copies of which have been lodged with this court. Two of the documents are depositions taken in conjunction with the district court proceedings: Murphy deposition dated December 6, 1979; Cole deposition dated December 7, 1979 relating to a different claim. The other two documents are affidavits outlining statistical evidence relevant to Ross' claim of unconstitutional composition of Colquitt County's 1973 grand and traverse jury venires: Friedman affidavit dated June 8, 1984; Jenkins affidavit dated June 10, 1984.

Ross now seeks a full hearing on the merits of his jury composition claim in order to develop this evidence, and argues in the alternative that we should grant relief on the merits of his jury composition claim because the proffered evidence presents a prima facie case of unconstitutional jury composition and the state has not suggested any "serious rebuttal testimony." The state argues that the motion to supplement

of his claim, the federal court was not serving the interest of comity by not addressing the merits. Ross previously had set forth these same arguments for the district court in his pleadings (*see* Petitioners' Consolidated Memorandum of Law Supporting Motion for Discovery at 20), but the district court had not adopted this reasoning.

After the filing of Ross' motion to alter or amend the judgment, the district court issued a Supplemental Opinion, *Ross v. Hopper*, 538 F.Supp. 105 (S.D.Ga.1982), in which it amended its memorandum and order concerning Ross' jury composition claim. It held that no principle of comity barred the federal court from considering the merits of the claim and vacated the portion of its first order that held differently. It denied Ross an evidentiary hearing and relief nevertheless. The district court did not have before it any statistical proffer of discrimination in Ross' juries since Ross' attorneys believed the necessary 1973 lists were unobtainable. They had not included Murphy's or Norman's deposition in their oral proffer to the district court at the hearing, either, but did file the Norman deposition with the court on the day of the May 1981 hearing.

should be denied, or in the alternative, remanded to the district court.

No single alternative correctly resolves all the issues raised by the motion. We find that proper disposition of the motion requires consideration of the request to supplement the record with the 1979 depositions apart from consideration of the request to supplement it with the 1984 affidavits.

### III. THE 1979 DEPOSITIONS

According to Ross' memorandum in support of his motion, the Murphy and Cole depositions were two of several taken by Ross' attorneys in connection with the federal district court proceedings that they expected would be automatically filed with the district court pursuant to Fed.R.Civ.P. 30(f)(1) and the Southern District of Georgia's Local Rules. In an affidavit (Boger affidavit dated June 8, 1984) filed in support of Ross' motion to supplement the record, one of Ross' attorneys stated that he and his co-counsel believed that the depositions had been automatically filed with the court and that there had not been a conscious decision to omit them from the record. He explained that they did not file these two depositions as part of their written proffers in 1981 under the then-recently changed Federal Rules[5] because they assumed that the depositions were already a part of the record in accordance with the requirements of the Federal Rules in effect at the time of the taking of the depositions.

#### A. *Murphy Deposition*

■ The state argues that appellant Ross should not be allowed to supplement the record with the deposition of Wilbur Murphy because there was no showing that it could not have been presented to the state habeas corpus court and because the deposition was never submitted to the federal district court. We reject the first argument: whether Murphy's testimony could have been presented to the state court is relevant to whether the evidence conforms to one of the categories of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), requiring the district court to hold a full evidentiary hearing. At this juncture, however, we only decide whether the Murphy deposition should be included in the record, as the Norman deposition is, to be part of the evidentiary proffer aimed at persuading the district court to hold such a hearing. The second argument is without merit because the record as well as the Federal Rules of Civil Procedure in effect at the time of the taking of the deposition reveal that it was reasonable to believe that the Murphy deposition had been filed with the court.

The record reveals that Ross' attorney explained to deponent Murphy during his deposition that the original transcript of the deposition would go directly from the court reporter to the federal court, and could be held by the court reporter for only 30 days during which the deponent could check for errors. No objection nor statement to the contrary was made by the state. The explanation was consistent with Fed.R.Civ.P. 30(e) and (f) in effect on that date which provided for automatic filing of depositions with the court by the officer before whom the deposition was taken. We find that Ross' attorney was justified in relying on the Rule and the understanding of those present at the deposition that this procedure would be followed.

■ The record also reveals irregularities in the filing of the Norman deposition that indicate that the omission of the Murphy deposition was not deliberate and that the parties could reasonably have believed it had become part of the record.[6] Finally,

---

**5.** Fed.R.Civ.P. 30(f)(1) was amended in 1980 to provide that the automatic filing of depositions with the court could be suspended by order of the court in individual cases. Rule 5(d) was amended at the same time to provide that automatic filing of depositions with the court was no longer required if the court "on motion of a party or on its own initiative" orders that depositions not be filed unless otherwise ordered or used. The amendments did not go into effect until August 1, 1980. 85 F.R.D. 521, 525, 528 (1980). In any event, neither party has directed us to such a court order in this case.

**6.** The record suggests that the exhibits from the Murphy deposition were filed with the court in January of 1980. They were accompanied by the Norman deposition, however, rather than

both the appellant[7] and appellees[8] relied on the Murphy deposition in their pleadings. According to circuit precedent, it is appropriate to supplement the record with a deposition upon which parties relied even though for some unexplained reason it was not filed below. *McDaniel v. Travelers Insurance Co.*, 494 F.2d 1189 (5th Cir. 1974);[9] *see also Clay v. Equifax, Inc.*, 762 F.2d 952, 955 n. 2 (11th Cir.1985) (district court correctly considered deposition testimony that was presented in briefs and motions even though deposition not filed with court).

We find, therefore, that the Murphy deposition should be made part of the record on appeal. Our actions are authorized under Fed.R.App.P. 10(e). Under Rule 10(e), "[i]f anything material to either party is omitted from the record by error or accident ..., the court of appeals, ... of its own initiative, may direct that the omission or misstatement be corrected...." Murphy's deposition is undoubtedly material to Ross' jury composition claim since Murphy, as the Colquitt County clerk, was the official custodian of the county's jury lists. We therefore grant Ross' motion as to the Murphy deposition. The deposition shall be made part of the record.

### B. *The Cole Deposition*

■ The state does not address in its brief the issue of whether or not Ross should be allowed to supplement the record with the Cole deposition and may have read the en banc court's remand of this case to the panel to be limited to the jury composition claim and evidence relevant thereto. The Cole deposition relates to Ross' claim that the state deprived him of the due process guarantees set forth in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). We have previously reviewed the relevant parts of the Cole deposition in our original panel opinion, *Ross v. Hopper*, 716 F.2d at 1536 n. 6, in connection with Ross' *Giglio* claim which we denied. This holding was reinstated by the en banc court. *Ross v. Kemp*, 756 F.2d at 1486. In light of the limited nature of the remand and the fact that the issue to which this deposition relates has already been resolved by this court, we deny the motion to supplement as to the Cole deposition.

## IV. THE 1984 AFFIDAVITS

The two 1984 affidavits consist of statements by a statistician (Friedman), and a criminal defense attorney (Jenkins), who

---

the Murphy deposition. Then, in May of 1981, when additional depositions were filed to complete the proffers of evidence made at the hearing, a copy of the Norman deposition was filed for the second time with the court. The fact that the Norman deposition incorporated much of Murphy's testimony could have reinforced the misperception that all the depositions relevant to the jury composition claim had been automatically filed. The questioning in Norman's deposition sought Norman's confirmation or explanation of what Murphy had already told the lawyers in his deposition earlier the same day.

7. Appellant Ross stated his intent to introduce testimony from the clerk in his original request for an evidentiary hearing in federal court. He specified that the clerk was one of the individuals to be deposed in his motion for discovery with supporting affidavit and notice of depositions. Subsequent to the actual taking of the deposition Ross referred to the deposition testimony, apparently believing it to be part of the record before the court, in his renewed motion

for an evidentiary hearing with supporting affidavit by annexing the original request which included the clerk's testimony in the list of evidence supporting his right to a hearing.

8. Perhaps the strongest indication of the reasonableness of the appellant's belief that the Murphy deposition was part of the record is the state's apparent belief that it was in the record and reliance on the deposition testimony in its pleadings. In its brief to this panel on December 27, 1982, in connection with our initial consideration of Ross' appeal from the district court's denial of relief, the state included in its description of the "deposition testimony presented to the District Court" an explanation of the substance of Murphy's testimony and included page references to the deposition transcript. Brief for Respondent-Appellee at 24.

9. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

were involved in a challenge to the validity of the 1975 jury lists in Colquitt County during pretrial proceedings in a 1977 criminal action (i.e., *State v. Nicolai*, Crim. No. 5886 (Indictment No. 11977 Super.Ct. Colquitt Co.)). Friedman sets forth in his affidavit the statistics for the racial and sexual composition of the Colquitt County jury lists in 1973 and 1975[10] and states that he obtained this information from either the clerk or a jury commissioner after he was retained in 1977 by Jenkins to analyze the Colquitt County jury lists that were to be used in the *Nicolai* case. Jenkins explains in his affidavit that he retained Friedman in 1977 and how he happened to be contacted by Ross' attorneys in 1984.[11]

Appellant does not claim that the omission from the record of the evidence contained in the 1984 affidavits was a mistake or oversight. Rather, Ross argues that his attorneys attempted to obtain the 1973 jury lists and statistics of the race and sex of those listed from state officials in 1976 and again in 1979, but were told by the state custodian of the records that the 1973 lists had been discarded in 1975. Ross' attorneys only discovered by chance, during their preparation for argument before the en banc court in June of 1984, that the information still existed in Friedman's files. We are faced, therefore, with a situation demanding a different analysis than the

10. Friedman reports that his research, which included review of the jury pool and venires from which Ross' grand and traverse juries were selected, revealed that according to the 1970 census, the community population age eighteen and older was 18.87% black and 53.53% female, whereas the 1973 grand jury list was 6.86% black and 4.68% female, and the 1973 traverse jury list was 9.95% black and 14.92% female. He calculated the disparities as follows:

| Category | Population | 1973 Grand Jury Venire | Absolute Disparity | Comparative Disparity |
|---|---|---|---|---|
| White | 81.13 | 93.14 | +12.01 | +14.80 |
| Black | 18.87 | 6.86 | −12.01 | −63.64 |
| Male | 46.47 | 95.32 | +48.85 | +105.12 |
| Female | 53.53 | 4.68 | −48.85 | −91.25 |

| Category | Population | 1973 Traverse Jury Venire | Absolute Disparity | Comparative Disparity |
|---|---|---|---|---|
| White | 81.13 | 90.05 | +8.92 | +10.99 |
| Black | 18.87 | 9.95 | −8.92 | −47.27 |
| Male | 46.47 | 85.08 | +38.61 | +83.08 |
| Female | 53.53 | 14.92 | −38.61 | −72.12 |

Friedman explained that even these figures significantly overrepresent the percentage of blacks on the jury venires because of missing precinct data from some predominantly white areas. Friedman provides this same data and analysis for the 1975 lists, finding a greater underrepresentation of blacks. Friedman also attests to his presence during testimony by jury commissioners at an evidentiary hearing in the *Nicolai* case. Finally, Friedman states his conclusion that based on his entire study of the 1973–75 Colquitt County jury selection system, the system failed to produce grand or traverse juries representative of the community.

11. Jenkins attests to his participation in the *Nicolai* case as attorney for one of the defendants and his motion challenging the composition of the grand and petit jury lists based on Friedman's study. Jenkins states that at the hearing

on his motion in Colquitt Superior Court, the clerk, Murphy, testified along with some of the jury commissioners and Friedman, but that the state offered no rebuttal evidence. Jenkins explains that the judge indicated at the close of the hearing that in light of the showing of substantial underrepresentation he had grave doubts as to the validity of the jury lists. Jenkins subsequently learned that the lists were reconstituted. He further states that based on the information he had in 1977, all the county's jury lists substantially underrepresented blacks and women prior to the 1977 revision. He also attests to the fact that Mr. Murphy was undoubtedly aware of the same information because Friedman conducted his investigation in the clerk's office, and because Murphy participated in the system of selection, testified at the hearing, and subsequently participated in the revision of the lists.

request to add the 1979 depositions to the record. Because the information in the affidavits was not before the district court in any form, and because neither of the parties relied on the evidence at an earlier point in the proceedings, Fed.R.App.P. 10(e) is inapplicable to this portion of the motion to supplement.[12] Appellant requests that this court exercise its inherent equitable authority to supplement the record on appeal.

### A. The Court of Appeals' Inherent Equitable Authority to Supplement the Record

The state does not question this court's authority to supplement the record on appeal. Both parties recognize that this court exercised such authority in *Dickerson v. Alabama*, 667 F.2d 1364, 1366–68 (11th Cir.), *cert. denied*, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982), when we granted the request by the petitioner therein to supplement the record on appeal with a state court trial transcript which the district court had not considered. Furthermore, this court exercised such authority

previously in this appeal by our order dated January 7, 1983 granting a motion by the state to supplement the record.[13]

The state's only argument for denying Ross' motion to supplement is that unlike the request in *Dickerson*, Ross' motion concerns affidavits containing information "obtained in relation to the trial of a totally distinct case" in which the "instant appellee" was not involved[14] and, therefore, never had the opportunity to rebut the evidence. We agree that the state must be provided with an opportunity to rebut the evidence, but we note that a remand to the district court would satisfy this issue.

There are additional concerns, however, that this court must consider before invoking our inherent equitable authority to enlarge the record and consider material that has not been considered by the court below. Such authority is rarely exercised, *Dickerson v. Alabama*, 667 F.2d at 1367, and this court has not articulated a general rule for when it is appropriate. Rather, we have dealt with such requests on a case-by-case basis.[15] We have refused to supplement

---

**12.** As a matter of course, this court of appeals delegates authority to the clerk of this court to grant motions to supplement if the motions are uncontested and the material at issue was before the district court. 11th Cir.R. 17(c)(8). Where the parties have treated the material as if it was part of the record and later discover that for some unexplained reason it was not, we rely on the authority of Fed.R.App.P. 10(e) as in the case of the Murphy deposition discussed above. *See also United States v. Page*, 661 F.2d 1080 (5th Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 136 (1982). We do not extend that authority beyond situations where the omission was "by error or accident," but instead recognize that it is our inherent equitable authority that is exercised in such cases. *See Dickerson v. Alabama*, 667 F.2d 1364, 1367 n. 5 (11th Cir.), *cert. denied*, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982). We recognize that this interpretation of Rule 10(e) conflicts with the Second Circuit's view (*see infra* note 16), however, we note that our approach is similar to that applied by other Courts of Appeals. *See, e.g., Turk v. United States*, 429 F.2d 1327, 1329 (8th Cir.1970); *Gatewood v. United States*, 209 F.2d 789, 792–93 (D.C.Cir. 1953).

**13.** Apparently, no objection was filed within the eleven days between the filing and the granting

of the motion, although the motion concerned material that was not before the district court. The state's motion to supplement pertained to its defense to Ross' *Giglio* claim. The proffered material consisted of an excerpt from a murder trial of one of Ross' coconspirators which took place after Ross' trial.

**14.** The state asserts in its brief that the "instant appellee" did not participate in the proceedings from which the affidavit information came. At oral argument, however, the state admitted that it had been involved in the proceedings of the *Nicolai* case from which the information came, insofar as a state attorney testified. Regardless of the state's role, provision for the state to rebut the evidence will ensure that it is not prejudiced by any prior nonparticipation.

**15.** This approach follows the Supreme Court's holding as to the proper treatment of issues presented to federal appellate courts but not passed on below. The Supreme Court has stated that the

matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule. Certainly there are circumstances in

the record when a party has filed supplemental material without requesting leave of this court or has appended material to an appellate brief without filing a motion to supplement. *See Harris v. United States,* 768 F.2d 1240, 1242 (11th Cir.1985) (government filed diplomatic note from foreign government with court of appeals without requesting leave to do so); *United States v. Bosby,* 675 F.2d 1174, 1181 n. 9 (11th Cir.1982) (government attached affidavit to its appellate brief without filing motion to supplement); *Mitchell v. Trade Winds Co.,* 289 F.2d 278, 279 (5th Cir.1961) (Labor Department attached file of correspondence to its appellate brief); *see also Kemlon Products & Development Co. v. United States,* 646 F.2d 223, 224 (5th Cir.), *cert. denied,* 454 U.S. 863, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981) (denial of motion to supplement record with items from related pending litigation between same parties, relying on general proposition that "court of appeals will not ordinarily enlarge the record on appeal to include material not before the district court.").

The cases in which we have allowed supplementation suggest consideration of several factors in deciding whether to exercise our discretionary authority. In *Dickerson,* we listed three factors that convinced us to exercise our discretionary power. First, acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issue. 667 F.2d at 1367. Second, remanding the case to the district court for consideration of the additional material would have been "contrary to both the interests of justice and the efficient use of judicial resources." *Id.* Third, the court cited the unique powers that federal appellate judges have in the context of habeas corpus actions by virtue of 28 U.S.C.

§ 2254(a). *Id.* at 1368 & n. 7. The Fifth Circuit acknowledged the significance of these first two factors in *Gibson v. Blackburn,* 744 F.2d 403, 405 n. 3 (5th Cir.1984), and relied on them to justify its consideration of photographic evidence used in a pretrial identification display that was added to the record after the district court had rendered its final judgment. Both the Eighth Circuit and the District of Columbia Circuit have invoked similar "interests of justice" language. *See Turk v. United States,* 429 F.2d 1327, 1329 (8th Cir.1970) (authorizing enlargement of record on appeal with preliminary hearing evidence not presented to trial court if it is "in the interest of justice" to do so); *Gatewood v. United States,* 209 F.2d 789, 792 n. 5 (D.C. Cir.1953) (court of appeals considered transcript of preliminary proceedings which had not been before trial court because it was in interest of both parties and due administration of justice).

This circuit does not consider the same factors in all cases, however. In *Erkins v. Bryan,* 663 F.2d 1048, 1052 (11th Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982), the panel allowed a party to supplement the record with documentary evidence that had been quoted in part in affidavits, but not presented in its entirety to the trial court. The only stated justification for granting the motion in that case was the fact that the other party had not objected to the motion. *Id.* at 1052 n. 1. In *United States v. Aulet,* 618 F.2d 182, 186 (2d Cir.1980), the Second Circuit cited the convergence of the parties' positions, in addition to the first two *Dickerson* factors, as a reason for allowing the government to supplement the record with copies of Jencks Act statements that had been dis-

which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, ... or where "injustice might otherwise result."
*Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). *See also United States v. Oakley,* 744 F.2d 1553, 1556

(11th Cir.1984) (per curiam) (refusing to consider new legal argument raised for first time in reply brief at appellate level). Ross' case raises a slightly different question, however, since the *issue* of whether Ross is entitled to an evidentiary hearing was passed on below, but the evidence in the proffered affidavits does significantly affect the analysis of the issue.

closed to the appellant but had not been presented to the trial court.[16]

### B. *Discussion*

Ross' case ordinarily would not constitute a situation in which it would be appropriate to exercise our inherent authority because, unlike the cases discussed above, Ross did not file his motion to supplement until after a panel of this court had already considered the issue and the parties had submitted briefs for en banc reconsideration. The motion concerns evidence relating to jury lists compiled more than ten years ago—evidence that was not included on Ross' direct appeal, nor in his state or federal habeas proceedings. Also, Ross has not yet established, under *Dickerson*'s first factor, that acceptance of the prof-

fered material would establish beyond doubt that he is entitled to a full evidentiary hearing on his jury claim under *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). One of the elements that Ross must establish under *Townsend*[17] is that his failure to present the proffered material to the state court was not the result of inexcusable neglect. 372 U.S. at 317, 83 S.Ct. at 759. Taken at face value, the proffered affidavits showing that the defense lawyers in the *Nicolai* case found the material in early 1977 and convinced the trial judge to order revision of the 1975 lists, suggest that the statistical evidence of jury composition was not so hidden that Ross' attorneys could not have

---

**16.** Although the Second Circuit relied on Fed.R. App.P. 10(e) rather than invoking the court's inherent authority in *Aulet,* we find its rationale for exercising Rule 10(e) authority relevant to the question presented in the instant case since the *Aulet* court's interpretation of Rule 10(e) indicates that the rule provides adequate authority to add material to the record even if it was not a mere error or oversight, 618 F.2d at 187, whereas in such a case this circuit looks to its inherent equitable authority rather than Rule 10(e). *See supra* note 12. In *Dickerson* we recognized this divergence in interpretations of the scope of Rule 10(e), but refused to express any view on the correct interpretation of the rule, and although citing *Aulet,* we relied on our inherent authority. We follow this precedent in the instant case.

**17.** Under *Townsend v. Sain,* Ross must also meet the threshold requirement of alleging facts, which if proven, would entitle him to relief, 372 U.S. at 307, 83 S.Ct. at 754, and he must show that his case comes within one of the six *Townsend* categories. *Id.* at 313, 83 S.Ct. at 757; *Thomas v. Zant,* 697 F.2d 977, 986 (11th Cir.1983), *appeal on other grounds following remand,* 766 F.2d 452 (11th Cir.1985). This panel's original rejection of Ross' claim that he was entitled to an evidentiary hearing was based on Ross' failure to meet the threshold requirement. The panel recognized that this shortcoming was due in part to the county's destruction of the 1973 jury lists. With the addition of the Friedman affidavit evidence, however, Ross does allege facts, which if proven, may meet the standard for a fourteenth amendment prima facie case set forth in *Castaneda v. Partida,* 430 U.S. 482, 494–95, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977), because: (1) blacks and women are undoubtedly recognizable distinct classes, *see Davis v. Zant,* 721 F.2d 1478, 1482 (11th Cir.1983)

*aff'd in relevant part on rehearing en banc,* 752 F.2d 1515, 1516, *cert. denied,* —— U.S. ——, 105 S.Ct. 2689, 86 L.Ed.2d 707 (1985); (2) Friedman's evidence is aimed at proving the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion called to serve over a significant period of time, *compare* 721 F.2d at 1482–83; and (3) Norman's deposition testimony suggests that the selection procedure was susceptible to abuse. *Compare id.* at 1484 & nn. 12 and 13. The facts alleged by Ross may also establish a sixth amendment violation under *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). Ross argues that the facts are already proven because under Fed.R.Evid. 1004, Friedman's summaries should be admissible for the truth of their contents since the original 1973 jury lists were destroyed without any bad faith on Ross' part and because Friedman's summaries were accurately compiled and admitted into evidence during the *Nicolai* hearing. (Also citing *Klein v. Frank,* 534 F.2d 1104 (5th Cir. 1976); *Burton v. Driggs,* 87 U.S. (20 Wall.) 125, 134, 22 L.Ed. 299 (1874)).

As to the remaining element, Ross argues that his case comes within three different *Townsend* categories: "(4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." *Townsend v. Sain,* 372 U.S. at 313, 83 S.Ct. at 757. The record clearly indicates that a fact material to Ross' constitutional claim was not adequately developed at the state court level. In a constitutional challenge to the composition of a jury, statistics of the makeup of the jury lists used are "indispensable to a fair, rounded, development of the material facts." *Id.* at 322, 83 S.Ct. at 762.

discovered it at the time of the state habeas proceedings in December of 1976. The record as it stands does not explain Ross' failure to subpoena the clerk and the 1973 lists into state court. Furthermore, Ross has not adequately explained why the statistical evidence was not discovered during the federal habeas proceedings through following up on Murphy's and Norman's remarks about the revision of the 1975 list.[18]

At the same time, however, we are extremely disturbed by the fact that the apparent negligence on the part of Ross' attorneys may have been due to their reliance on misrepresentations by the state official who had legal custody of the records. We are also disturbed by the state official's failure to produce the *Nicolai* records or any other documents when he was subpoenaed and deposed in 1979 in connection with Ross' federal habeas proceedings. Equally disquieting is the seeming inconsistency in the disclosure of the jury lists to different attorneys in different cases. These unanswered questions and inconsistencies in the record as it stands are even more troublesome viewed in light of the fact that the evidence pertains to a claim which Ross raised as early as 1976 in his state habeas petition and which he continued to pursue in his federal habeas proceedings. Moreover, Ross' proffered evidence, if included in the record, would certainly appear to have a definite impact on his ability to prove the illegal composition of his grand and traverse juries.[19] Because of these allegations, we find it appropriate to invoke our inherent authority and remand the motion to supplement the record to the district court for a hearing to resolve the threshold issue of inexcusable neglect. *See Thomas v. Zant,* 697 F.2d 977, 986 (11th Cir.1983), *appeal on other grounds following remand,* 766 F.2d 452 (11th Cir.1985) (recognizing that inexcusable neglect issue "may itself require an evidentiary hearing").

Our remand in this case is consistent with the other concerns mentioned in *Dickerson.* Because of the significance of the alleged constitutional violations, the interests of justice will best be served by remanding for further hearings. The Supreme Court recently reaffirmed its position that discrimination on the basis of race in the selection of grand jurors undermines the fundamental values of the judicial system and of society as a whole to such an

---

**18.** We cannot determine from the record what could have been uncovered, either, as the state suggested at oral argument that no transcript of the *Nicolai* hearing had been made and no written order was issued. We also note that Murphy and Norman testified about revising the 1975 list and Ross, of course, needed the 1973 list.

**19.** The statistics set forth by Friedman concerning the underrepresentation of women on both the grand and traverse jury venires present a case that is undoubtedly significant compared to the other cases in which we have granted relief on similar constitutional challenges to jury composition. (*Compare* 38.6% traverse jury venire disparity and 48.8% grand jury venire disparity for women in Friedman's calculations for Ross' case *with*: *Bowen v. Kemp,* 769 F.2d 672, 685 n. 9 (11th Cir.1985) (22.7% traverse jury disparity for women); *Davis v. Zant,* 721 F.2d at 1481, n. 3 (18.4% traverse jury list disparity for women, 18.1% for blacks); *Gibson v. Zant,* 705 F.2d 1543, 1545 (11th Cir.1983) (31.6% trial jury list disparity for women, 20.39% for blacks, 37.9% grand jury list disparity for women, 20.8% for blacks); *Machetti v. Linahan,* 679 F.2d 236, 240 (11th Cir.1982), *cert. denied,* 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983) (36% petit jury list disparity and 42% grand jury list disparity for women); *Porter v. Freeman,* 577 F.2d 329, 331–32 (5th Cir.1978) (20.4% jury roll disparity for women); *Preston v. Mandeville,* 428 F.2d 1392 (5th Cir.1970) (approximately 13.3% master jury roll disparity for blacks)).

Although Ross' statistics of underrepresentation of blacks is not as strong, the grand jury disparity of 12% is significant compared to some cases in which we have granted relief, and depending on the statistics of the several predominantly white precincts which were omitted from Friedman's summary, the traverse jury racial disparity of 8.9% may make out a cognizable claim. *But see United States v. Tuttle,* 729 F.2d 1325, 1327 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 968, 83 L.Ed.2d 972 (1985) (asserting that Eleventh Circuit consistently requires disparity of over 10%); *United States ex rel Barksdale v. Blackburn,* 639 F.2d 1115, 1125 (5th Cir.), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 603, 70 L.Ed.2d 593 (1981) (limiting statistical showings to only include population with more than a seventh-grade education to fulfill Louisiana state law requirement).

extent that in the face of such a practice, the criminal defendant's conviction must be reversed. *See Vasquez v. Hillery,* —— U.S. ——, 106 S.Ct. 617, 622, 88 L.Ed.2d 598 (1986).[20] This court too, on more than one occasion, has recognized the special importance of a jury representing all segments of the community. We have further noted that "[t]he importance of affording a defendant trial by a representative jury of his peers is magnified in capital cases, where juries are required to consider *'as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Davis v. Zant,* 721 F.2d 1478, 1482 (11th Cir.1983), *aff'd in relevant part on rehearing en banc,* 752 F.2d 1515, *cert. denied,* —— U.S. ——, 105 S.Ct. 2689, 86 L.Ed.2d 707 (1985) (quoting in part *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (emphasis in original)); *Gibson v. Zant,* 705 F.2d 1543, 1546 (11th Cir.1983). The remand will also result in efficient use of judicial resources as it will eliminate a successive habeas petition on this claim. *See Sanders v. United States,* 373 U.S. 1, 22, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (encouraging flexible handling of petitions for habeas corpus to avoid successive petitions). Finally, we note that in the instant case, this court, like the *Dickerson* court, is "reviewing the district court's review of the habeas corpus claim of a state prisoner" and as federal appellate judges, we "have been granted unique powers in the context of

habeas corpus actions." 667 F.2d at 1368 & n. 7.

At the hearing before the district court on remand, the parties shall present evidence on the issue of inexcusable neglect including the unanswered questions: whether the clerk agrees that in 1976 he advised Ross' attorneys that the 1973 lists already had been destroyed; whether it was the clerk or the jury commissioners who gave the lists to the *Nicolai* lawyers; why the clerk did not produce the *Nicolai* records in response to the 1979 subpoena; why the clerk did not disclose during his 1979 deposition that he had testified at the *Nicolai* hearing; why Ross' attorneys did not subpoena the clerk and the jury commissioner to testify and to produce the 1973 jury lists at the state court habeas hearing; and why Ross' attorneys did not pursue the clerk's reference to the *Nicolai* case during the federal habeas proceeding by checking the court records and newspaper accounts or by further depositions concerning the *Nicolai* case. Only after such a hearing will the district court be able to determine whether Ross' attorneys' failure to locate the statistical evidence sooner was inexcusable neglect or whether the negligence was excusable action in reliance on misrepresentations by the custodian of the state records. *See Thomas v. Zant,* 697 F.2d at 980–83 (analyzing when defendants' and attorneys' actions constitute inexcusable neglect and when they do not).

■ If the district court finds at the hearing that Ross has shown there was no

---

**20.** In *Vasquez v. Hillery,* the Supreme Court held that requiring the state to retry a criminal defendant in 1986 who was first indicted in 1962 was not too harsh a remedy because the racial discrimination in the selection of the defendant's grand jury was a constitutional violation ."possible only under color of state authority, and wholly within the power of the State to prevent." 106 S.Ct. at 623. The Court refused to allow the subsequent conviction by a properly constituted petit jury to validate the conviction. The Court explained that. a grand jury's impact extends beyond determining whether probable cause exists; the grand jury has "the power to charge a greater offense or a lesser offense; numerous counts or a single count; and *perhaps most significant of all, a capital*

*offense or a noncapital offense*—all on the basis of the same facts." *Id.* (emphasis added). Hence, a subsequent conviction does not establish that the discrimination in the selection of the original body exercising such power did not impermissibly infect the nature of the later proceedings. The Court specifically rejected the contention that if a long period of time elapses between conviction and the filing of the federal habeas corpus petition, then relief should depend on the ability of the state to get a second conviction. (In Hillery's case, the time lapse was sixteen years). Ross' federal habeas petition, filed within four and one-half years of his conviction, alleged discrimination in both the grand and petit juries.

inexcusable neglect then the court shall allow the record to be supplemented and determine whether the record, as supplemented, is sufficient, under *Townsend v. Sain,* to entitle Ross to a full evidentiary hearing on the merits of his jury composition claim. In order to prevail on the merits, Ross must present a prima facie case to the district court and to this end should be permitted to present additional testimonial or documentary evidence bearing on the claim. The state would be able to present rebuttal evidence.[21] The district court would then determine whether or not Ross was indicted, and/or convicted and sentenced by an unconstitutionally composed jury and therefore entitled to habeas corpus relief.

In conclusion, we hereby GRANT the motion to supplement the record as to the Murphy deposition pursuant to Fed.R. App.P. 10(e), DENY the motion as to the Cole deposition, and REMAND this case to the district court for the limited purposes as set forth in our opinion above.

LYNNE, District Judge, concurring in part and dissenting in part:

I concur in Parts I, II, III, and IV–A of the sensitive and carefully structured opinion of the court. My disagreement with the decision of the majority to remand the motion to supplement the record with the Friedman and Jenkins affidavits is a narrow, but critical one.

As the court acknowledges, one of the elements that Ross must establish under *Townsend* is that his failure to present the proffered material to the state court was not the result of inexcusable neglect. The only excuse discerned by the court on this record for failure to have to have done so is the single unsworn statement of Phipps,

his attorney, at the state habeas hearing on December 9, 1796, as follows:

MR. PHIPPS: Your Honor, on claim 21, we have no evidence to present because when I went to the Clerk's Office in Cloquitt County to examine the jury list that were [sic] in use at that time, I was informed by the Clerk that about a year ago the jury list was revised and the practice is that when they revise they discard the trial list. So the Clerk was unable to find a list that could be identical as the one in use at that time. So we don't have any further evidence on that, uh, claim.

If the two affidavits are to be credited, they establish beyond peradventure that the relevant jury lists were in existence at the time of the state habeas hearing since they were made available to Friedman approximately one month later by *either the clerk of the court or by the jury commissioners.*

On February 25, 1977, Friedman's statistical study of the jury lists was relied upon by the defendants in the *Nicolai* case to support their challenge to the jury lists. On that date a front page article in *The Moultrie Observer* publicized the attack on the Colquitt County grand and petit juries with specific reference to the Friedman statistics.

It is incomprehensible that a lawyer who frequently practiced in Moultrie with a population of approximately fifteen thousand, the county seat of Colquitt County, was not aware of the purported factual basis for a challenge to the jury lists and of an opportunity to move to supplement the record either in the state habeas court or the record on appeal to the Georgia Supreme Court from its judgment. Of compelling

---

21. The state has not yet proffered meaningful rebuttal evidence in response to Ross' motion to supplement. The jury commissioner's statement at his deposition that no one was excluded because of their race or gender is insufficient, *Whitus v. Georgia,* 385 U.S. 545, 551, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), and the mere affirmations of good faith by the county officials are not necessarily adequate. *See Bowen v. Kemp,* 769 F.2d at 688. The fact that a member of the underrepresented group was on the commission also may be irrelevant. *Id.* To rebut an equal protection violation, the state must prove absence of discriminatory intent, and to rebut a sixth amendment case, the state must prove a significant governmental interest justifying the imbalance of the groups. *Davis v. Zant,* 721 F.2d at 1482 n. 6 (comparing *Casteneda* with *Duren*).

significance is the failure to come forward with the Friedman evidence in behalf of Ross at the federal habeas hearing on January 26 and 27, 1981.

Not until the eve of the oral argument before the en banc court was an effort made to supplement the record with material which was never before either the state or federal habeas court. Since in my view inexcusable neglect is so glaringly apparent on the record, I would recognize the motion to supplement for what it is, a last ditch effort to bolster a failing cause. I would forthrightly deny it.

From the order remanding such motion to the district court, I respectfully dissent.