**Kenneth GRIFFIN,
Petitioner–Appellant,**

v.

**Richard L. DUGGER,
Respondent–Appellee.**

No. 84–3196.

United States Court of Appeals,
Eleventh Circuit.

May 19, 1989.

Rehearing and Rehearing In Banc
Denied July 29, 1989.

Patterson, Bleknap, Webb, & Tyler, Fred Davis, Robert LoBue, Donald Baer, Douglas B. Maynard, New York City, John D. Middleton, Atty., Gainesville, Fla., for petitioner-appellant.

Gary L. Printy, Tallahassee, Fla., for respondent-appellee.

ON REMAND FROM THE UNITED
STATES SUPREME COURT

Before TJOFLAT, KRAVITCH and HATCHETT, Circuit Judges.

PER CURIAM:

By applying the Supreme Court's holdings in *Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986) and *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), we affirm the district court's denial of the petitioner's petition for writ of habeas corpus.

The facts and procedural history in this capital case are found in *Griffin v. Wainwright*, 760 F.2d 1505 (11th Cir.1985), *cert.*

*granted and judgment vacated,* 476 U.S. 1112, 106 S.Ct. 1964, 90 L.Ed.2d 650, *cert. denied,* 476 U.S. 1123, 106 S.Ct. 1992, 90 L.Ed.2d 672 (1986). We remanded Griffin's unconstitutional application of the death penalty claim to the district court for consideration in light of our opinions in *McCleskey v. Kemp,* 753 F.2d 877 (11th Cir.1985) (in banc), *cert. granted in part,* 478 U.S. 1019, 106 S.Ct. 3331, 92 L.Ed.2d 737 (1986), *aff'd,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), and *Ross v. Kemp,* 756 F.2d 1483 (11th Cir.1985) (in banc), *on remand,* 785 F.2d 1467 (11th Cir.1986). The Supreme Court granted Griffin's subsequent petition for a writ of certiorari and remanded for further consideration in light of *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). *Griffin v. Wainwright,* 476 U.S. 1112, 106 S.Ct. 1964, 90 L.Ed.2d 650 (1986).

Following the Supreme Court's remand, we directed the parties to provide supplemental briefing on the following issues: (1) what action should this court take in light of the Supreme Court's remand for further consideration in light of *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986); (2) of what relevance is *Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987); and (3) what action should this court take in light of *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

The parties agree and we find that the harmless error rule of *Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) has no application to this case. Accordingly, this issue will not be discussed further.

### I. The *Cabana* Issue

■ Griffin contends that *Cabana* requires Florida's state judicial system to determine whether his culpability is commensurate with the imposition of the death penalty. He argues that the state courts have not made a sufficient determination of his culpability. Griffin claims that the state trial court instructed the jury on the elements of both premeditated murder and first degree murder, but that the jury returned only a general verdict of guilty. Thus, Griffin asserts that the jury may have convicted him without finding that he killed the victims or intended their deaths because the instruction on felony murder stated that he could be found guilty even though no premeditated design or intent to kill existed. Additionally, Griffin argues that none of the various state court opinions in this case make the necessary *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) finding.[1]

The state contends that the state trial judge's sentencing order found Griffin to be the actual killer of the victims. Thus, the findings satisfy *Enmund.* The state emphasizes the district court's finding, based on the state trial proceedings, that Griffin acted alone in killing the victims.[2]

*Cabana v. Bullock* requires that the federal habeas corpus court examine the entire course of the state-court proceedings to determine whether, at some point in the state's process, the requisite finding as to the petitioner's culpability has been made. *Cabana,* 474 U.S. at 387–88, 106 S.Ct. at 697. If such a finding has been made, it is entitled to a presumption of correctness in federal courts, pursuant to 28 U.S.C.A. § 2254(d). *Cabana* at 388, 106 S.Ct. at 698.

*Cabana* clarified *Enmund.* In *Enmund,* the Supreme Court forbade the imposition of the death penalty on "one ... who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, or intend that a killing take place or that lethal force will be employed." *Enmund,* 458 U.S. at 797, 102 S.Ct. at 3376. *Cabana* explains that *Enmund* protects defendants who, although guilty of capital murder as defined by state law, may not lawfully be sentenced to death because they did not kill, attempt to kill, or intend to kill. *Cabana,* 474 U.S. at 385, 106 S.Ct. at 696.

---

**1.** *See Griffin v. State,* 414 So.2d 1025 (Fla.1982); *Griffin v. State,* 447 So.2d 875 (Fla.1984).

**2.** *See Griffin v. Wainwright,* 588 F.Supp. 1549, 1561 (M.D. Fla.1984).

The *Cabana* Court delineated "the appropriate course of action for a federal court faced with an *Enmund* claim when the state courts have failed to make any finding regarding the *Enmund* criteria." *Cabana,* 474 U.S. at 390, 106 S.Ct. at 699. Although recognizing that federal and state courts are equally competent to make the factual determination of whether a defendant in fact killed, attempted to kill, or intended to kill, the *Cabana* Court concluded that the desirable alternative is to allow the state's judicial system to make this determination in the first instance. *Cabana* at 390, 106 S.Ct. at 699. The Court reasoned:

> First, to the extent that *Enmund* recognizes that a defendant has a right not to face the death penalty absent a particular factual predicate, it also implies that the State's judicial process leading to the imposition of the death penalty must at some point provide for a finding of that factual predicate.... Second, the State itself has 'a weighty interest in having valid federal constitutional criteria applied in the administration of its criminal

law by its own courts.' [Citations omitted.]

*Cabana* 474 U.S. at 390–91, 106 S.Ct. at 699.

We hold that the Florida judicial system has satisfied *Cabana* in this case. The record shows that the appropriate *Enmund* findings were made in Florida's judicial system. The state trial court made a finding that Griffin played a major role in the capital felony, and was, in fact, the actual killer of one of the victims.[3] Because these findings by the state trial court satisfy *Enmund,* Griffin has no valid *Cabana* claim.

## II. The *McCleskey* Issue

■ Griffin contends that we should remand his case to the district court for an evidentiary hearing on whether his death sentence was unconstitutionally based on the race of his victims. Griffin argues that the consideration of racial factors in his case violated the due process and equal protection clauses of the fourteenth amendment and the eighth amendment because

---

**3.** The trial court found that:

> These murders took place in the early morning hours of September 10, 1975, when [Griffin] and two accomplices went to a convenience store on U.S. Highway 301, south of Starke, committed a robbery of the store, killed the manager of the store, Glen Cavell Lundgren, while in the store, departed taking one occupant (the only eyewitness other than [Griffin]) in the store, Keith Kirchaine, killed him a few miles away from the store and left his body beside the road, where it was discovered the next day. One accomplice was granted immunity and testified at the trial.

Transcript of Sentencing Hearing at 10.

> The trial court found that:
> [A] disinterested witness testified that [Griffin] actually told him about the robbery and [Griffin] stated he shot the boy in the store and that they took the other boy from the store off into the woods and killed him, but [Griffin] did not tell him how many times 'he shot the boy.'

Transcript of Sentencing Hearing at 11.

> The trial court found that:
> The evidence, including [Griffin's] statement to an uninvolved third party, points directly to [Griffin's] active participation in the robbery and actual shooting of the victim [Count I].

Transcript of Sentencing Hearing, at 12–13.

> The trial court found that:

> The victim as to Count II was the only eyewitness, an innocent bystander, to the robbery and killing of the victim in Count I. He was taken by [Griffin] from the scene of the robbery and first murder, and on a lonely road some three and a half miles away was shot by [Griffin] for the sole and only purpose of avoiding or preventing later identification and arrest.

Transcript of Sentencing Hearing at 14–15.

> The trial court found that:
> The capital felony was especially heinous, atrocious or cruel. The victim of the murder in Count II was a young lad who begged not to be killed. He was shot at least three times by [Griffin], one at close range and others while further away. The evidence shows that he was not killed by the first shot, but struggled beside the roadway over a length of several yards; that he was shot again and again; and that he later died from bleeding to death from his multiple wounds, after being left on the side of a lonely road to die. Such killing was atrocious, outrageously and extremely wicked and vile, and shockingly evil.

Transcript of Sentencing Hearing at 15.

> The trial court found that:
> The evidence, including [Griffin's] statement to an uninvolved third party, points directly to [Griffin's] active participation in the robbery and actual shooting of the victim.

Transcript of Sentencing Hearing at 16.

his death sentence was imposed in an arbitrary, capricious, and irrational manner. Griffin asserts that his claims are based on the individual circumstances of his case and not solely on statistical submissions like those addressed in *McCleskey.*

Griffin claims that the prosecutor improperly addressed the race of the victims in his case, and in other death penalty cases, and that statistical studies demonstrate a correlation between the imposition of the death sentence and the victim's race. Taken together, Griffin argues that these two forms of evidence demonstrate that the death sentence in his case is unconstitutional.

### A. The Prosecutor's Statements

Griffin argues that the prosecutor improperly made repeated references to the race of his victims and that these remarks served no justifiable purpose because the race of the victims was never an issue at trial. Griffin claims that if given the opportunity to produce evidence at a hearing, he will establish a pattern of behavior by the prosecutor relating to himself and others where the prosecutor intentionally referred to the race of the victims.

Citing *Turner v. Murray,* 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986), Griffin contends that any unnecessary risk of racial prejudice in a death penalty proceeding is unconstitutional. *Turner,* however, is distinguishable from this case. In *Turner,* the Supreme Court vacated Turner's death sentence because the trial judge failed to question prospective jurors on racial prejudice, and thereby failed to adequately protect Turner's constitutional right to an impartial jury. In this case, Griffin merely asserts that the race of his victims may have influenced the jury to impose a death sentence. Griffin makes no claim that the state trial judge failed to protect his right to trial by an impartial jury.

Griffin also cites *Robinson v. State,* 520 So.2d 1 (Fla.1988) to argue that the heightened risk created whenever issues of race are injected into a capital proceeding require new sentencing proceedings. In *Robinson,* the prosecutor cross-examined Rob-

inson's medical expert and inquired into the race of Robinson's victims from previous crimes during the penalty stage of the trial. The Florida Supreme Court found:

> The prosecutor's comments and questions about the race of the victims of prior crimes committed by appellant easily could have aroused bias and prejudice on the part of the jury. That such an appeal was improper cannot be questioned. The questioning and resultant testimony had no bearing on any aggravating or mitigating factors. [Footnote omitted.]

*Robinson,* 520 So.2d at 7. The Florida Supreme Court found that the risk that issues of race may have influenced the jury's decision was unacceptable, reversed the death sentence, and remanded the case to the trial court for a new sentencing hearing.

> Because we cannot say beyond a reasonable doubt that the jury's recommendation was not motivated in part by racial considerations, we cannot deem the error harmless.

*Robinson,* at 8.

*Robinson,* however, is also distinguishable. The Florida Supreme Court vacated Robinson's death sentence because the prosecutor impermissibly argued a nonstatutory aggravating factor and injected evidence calculated to arouse racial bias during the penalty phase of the trial. The court found that the prosecutor deliberately attempted to insinuate that Robinson had a habit of preying on white women, which constituted an impermissible appeal to racial bias and prejudice. A review of Griffin's trial and sentencing transcripts do not reveal insinuations approaching the magnitude of those presented in *Robinson.* We hold that the prosecutor's comments concerning the race of Griffin's victims were not impermissible appeals to racial bias and prejudice.

### B. Statistical Evidence

Griffin argues that statistical evidence exists which demonstrates that a defendant convicted in Florida of murdering a white person is nearly five times more likely to

receive the death penalty than one convicted of murdering a black victim.[4] Griffin contends that these studies show a significant and undeniable correlation between the race of the victim and the imposition of the death penalty in Florida. Griffin emphasizes that the studies establish the existence of a risk that race entered into the decision to impose his death sentence.

Griffin contends he is entitled to an evidentiary hearing to fully develop the facts surrounding the prosecutor's improper reference to his victims' race. He contends that although he did not raise this claim until his petition for post-conviction relief, he was improperly denied an opportunity to develop the necessary facts because the state courts improperly ruled that the claim was procedurally barred. See Griffin v. Wainwright, 760 F.2d at 1518.

We reject Griffin's claim to an evidentiary hearing. To prevail under the equal protection clause, Griffin must prove that the decisionmakers in his case acted with discriminatory purpose. McCleskey, 481 U.S. at 292, 107 S.Ct. at 1766. In McCleskey, the Supreme Court found that the nature of the capital sentencing decision, and the relationships of the statistics to that decision, are unique. Each decision to impose the death penalty is made by a petit jury selected from a properly constituted venire. Each jury is unique in its composition, and the Constitution requires that its decision rest on consideration of enumerable factors that vary according to the characteristics of the individual defendants and the facts of the particular capital offenses. McCleskey at 294, 107 S.Ct. at 1767. The Supreme Court held that the Baldus Study relied on by McCleskey was insufficient to support an inference that any of the decisionmakers in McCleskey's individual case acted with discriminatory purpose.

McCleskey, at 297, 107 S.Ct. at 1769. Griffin's argument that the prosecutor acted with discriminatory intent in commenting on the race of the victims, and his offer to provide statistical evidence that a defendant convicted in Florida of murdering a white victim is nearly five times more likely to receive the death penalty than one convicted of murdering a black victim, would be insufficient to prove an equal protection violation under McCleskey.[5]

Likewise, Griffin's argument that the prosecutor's reference to racial factors violated his eighth amendment rights are unavailing. Griffin contends that the heightened risk created whenever issues of race are injected into a capital proceeding create a situation for a new sentencing hearing. The Supreme Court in McCleskey recognized that,

> because of the risk that the factor of race may enter the criminal process, we have engaged in 'unceasing efforts' to eradicate racial prejudice from our criminal justice systems. Our efforts have been guided by our recognition that 'the inestimable privilege of trial by jury ... is a vital principle, underlying the whole administration of criminal justice.' Thus it is the jury that is a criminal defendant's fundamental 'protection of life and liberty against race or color prejudice.' Specifically, a capital sentencing jury representative of a criminal defendant's community assures a 'diffused impartiality,' in the jury's task of expressing the conscience of the community on the ultimate question of life and death. [Citations omitted.]

McCleskey at 309–10, 107 S.Ct. at 1775–76. The Supreme Court declined to accept the conclusion presented by the Baldus Study that an unacceptable risk of racial preju-

---

4. See S. Gross and R. Mauro, *Patterns of Death: An Analysis of Racial Disparities in Capital Sentencing and Homicide Victimization*, 37 Stan. L. Rev. 27, 78 (1984); Baldus, Woodworth and Palasky, *Arbitrariness and Discrimination in the Administration of the Death Penalty: A Challenge to State Supreme Courts*, 15 Stetson L.Rev. 133, 158 (1986); H. Zeisel, *Race Bias in the Administration of the Death Penalty: The Florida Experience*, 95 Harv. L. Rev. 456 (1981); M. Radelet, "Racial Characteristics in the Imposi-

tion of the Death Penalty," *American Sociological Review* (1981); and Bowers and Pierce, "Arbitrariness in Discrimination Under Post-*Furman* Capital Statutes," *Crime and Delinquency* (1980).

5. Griffin failed to argue his fourteenth amendment due process claim. Accordingly, we need not address this issue.

dice may exist which influences capital sentencing decisions. *McCleskey v. Kemp* at 309, 107 S.Ct. at 1775. We agree. Accordingly, we reject Griffin's claim.

## CONCLUSION

Griffin has failed to establish that his death sentence was imposed in violation of *Cabana* and *Enmund,* or that he should receive an evidentiary hearing concerning his *McCleskey* claims. Accordingly, we affirm the denial of Griffin's petition for writ of habeas corpus.

AFFIRMED.