F I L E D
United States Court of Appeals
Tenth Circuit

SEP 20 2000

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 98-1421

WILLIAM R. KENNEDY, JR.,

Defendant-Appellant.

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 97-B-816)**

---

Sean Connelly (Thomas L. Strickland, United States Attorney; Stacey L. Ross,
Assistant United States Attorney, with him on the brief), Assistant United States
Attorney, Denver, Colorado, for Plaintiff-Appellee.

Craig L. Parshall (James Rouse, Englewood, Colorado; Daniel T. Smith, Denver,
Colorado, with him on the briefs), Fredericksburg, Virginia, for Defendant-
Appellant.

---

Before **TACHA, HOLLOWAY** and **BRORBY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

Petitioner William R. Kennedy, Jr. appeals from the district court's denial of an evidentiary hearing and other relief regarding Mr. Kennedy's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, alleging prosecutorial misconduct and ineffective assistance of counsel. We exercise jurisdiction under 28 U.S.C. §§ 1291 and 2253, and deny Mr. Kennedy's request for a certificate of appealability and dismiss his appeal.

I. BACKGROUND

On July 2, 1992, Mr. Kennedy was charged in two separate indictments by a federal grand jury. *United States v. Kennedy*, 29 F. Supp.2d 662, 665 (D. Colo. 1998). In one of the indictments, the grand jury charged Mr. Kennedy committed mail and wire fraud, racketeering and money laundering, from 1984 through 1988. The grand jury found Mr. Kennedy, acting as the president of Western Monetary Consultants, Inc. (Western), was involved in "a massive Ponzi scheme to defraud numerous precious metals investors." *United States v. Kennedy*, 64 F.3d 1465, 1468 (10th Cir. 1995). The other indictment charged Mr. Kennedy with crimes arising from his failure to report funds received from Kuwaiti officials. *Kennedy*, 29 F. Supp.2d at 665-66. These funds were to be used to support efforts to end the occupation of Kuwait by the Iraqi army. *Id*. at 666. Only the indictment charging Mr. Kennedy with crimes arising from his involvement in the precious

metals scheme led to the convictions at issue in this appeal.

In Mr. Kennedy's trial for his involvement in Western's operations, the prosecution argued Mr. Kennedy intended to defraud his customers when, rather than purchasing the precious metals the customers ordered, he (1) lost their money by speculating in the future's market; (2) used it to fund conservative causes and organizations; and (3) spent it on operating expenses, executive compensation and generating new sales. Mr. Kennedy's theory of defense was that he was unable to fill precious metals orders because he had mismanaged the company. After a seven week trial, the jury found Mr. Kennedy guilty of one count of racketeering in violation of 18 U.S.C. §§ 1962(c) and 1963; nine counts of aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2 and 1341; and seven counts of aiding and abetting money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) & (2). *Kennedy*, 64 F.3d at 1469; *Kennedy*, 29 F. Supp.2d at 666. The court sentenced him to twenty years in prison. This court affirmed Mr. Kennedy's conviction on direct appeal, but indicated Mr. Kennedy could pursue his ineffective assistance of counsel claim in a collateral proceeding. *Kennedy*, 64 F.3d at 1474-75, 1481 (10th Cir. 1995).

Mr. Kennedy subsequently filed the 28 U.S.C. § 2255 petition at issue

alleging various claims including ineffective assistance of counsel and claims relating to prosecutorial misconduct. The district court determined all of the claims Mr. Kennedy asserted were procedurally barred except his claims of ineffective assistance of counsel and the prosecutorial misconduct claims relating to the prosecution's alleged intrusion into Mr. Kennedy's relationship with his attorney. As to these remaining claims, the district court denied Mr. Kennedy's request for an evidentiary hearing concluding "the petition, files, and record of this case conclusively demonstrate that he is not entitled to § 2255 relief," and denied his habeas petition. *Kennedy*, 29 F. Supp.2d at 686. Mr. Kennedy subsequently filed a timely notice of appeal and a request for a certificate of appealability. After oral argument in the present appeal, Mr. Kennedy filed a motion with this court requesting leave to supplement the record on appeal to include an affidavit which was not before the district court.

## II. DISCUSSION

### A. Motion to Supplement the Record on Appeal

We first address Mr. Kennedy's request to supplement the record before this court. The evidence Mr. Kennedy wishes to include in the record on appeal consists of an affidavit from Keith Danley. In 1989 and 1990, Mr. Danley was a paralegal and law clerk at the law firm of Brown, Arvanitis & McDonnell (Brown

& McDonnell), a firm that represented Mr. Kennedy. After taking the bar exam, Mr. Danley left Brown & Donnell and became an employee of Mr. Kennedy in October 1990. In his motion to supplement the record, Mr. Kennedy alleges Mr. Danley acted as his attorney in connection with both civil and the potential criminal matters arising from Mr. Kennedy's actions as president of Western. He asserts the prosecution intentionally invaded that relationship to gather information used against Mr. Kennedy in the criminal prosecution at issue in this case and in formulating its trial strategy. Mr. Kennedy asserts Mr. Danley's affidavit supports these allegations. However, the evidence which Mr. Kennedy seeks to introduce was not a part of the record before the district court.

Federal Rule of Appellate Procedure 10(e) authorizes the modification of the record only to the extent it is necessary to "truly disclose[] what occurred in the district court." Fed. R. App. P. 10(e). This court will not consider material outside the record before the district court. *See In re Capital Cities*, 913 F.2d 89, 96 (3d Cir. 1990). In *Anthony v. United States*, 667 F.2d 870, 875 (10th Cir. 1981), *cert. denied*, 457 U.S. 1133 (1982), we stated Rule 10(e) "allows a party to supplement the record on appeal" but "does not grant a license to build a new record." *Id.* (citing cases). Because the affidavit was not before the district court, Rule 10(e) does not countenance supplementing the record in this instance.

*See Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1475-76 (10th Cir. 1993); *United States v. Walker*, 601 F.2d 1051, 1054-56 (9th Cir. 1979).

Nevertheless, Mr. Kennedy argues this court should exercise its "inherent equitable authority" to enlarge the record on appeal. Mr. Kennedy points to our decision in *Allen v. Minnstar, Inc.*, as authority for this argument. In *Allen*, we concluded the district court did not err by denying the appellant's request to add to the record portions of a deposition which were not before the district court when it ruled on the appellees' motion for summary judgment. *Allen*, 8 F.3d at 1474. In making this determination, we quoted from *Jones v. Jackson Nat'l Life Ins. Co.*, 819 F. Supp. 1385, 1387 (W.D. Mich. 1993). *Id.* While denying a motion to supplement the record on appeal because the proposed evidence was not before the court at the time its final decision was made, the *Jones* court noted the court of appeals may have "an 'inherent equitable power' to supplement the record exceeding the power provided in Rule 10(e)," but concluded any such power is not to be exercised by the district court. *Jones*, 819 F. Supp. at 1387 (citations omitted). Although in *Allen* we included the above statement from *Jones*, we did not address the issue of whether this court may, and under what circumstances should, allow the augmentation of the record on appeal to include evidence not before the district court. *See Allen*, 8 F.3d at 1474-1476. Rather,

we simply determined supplementation was not appropriate under the circumstances. *See id.* Even so, Mr. Kennedy urges us to adopt the reasoning of other courts of appeals concerning the "inherent equitable power" of the court of appeals to supplement the record on appeal.

In support of his argument, Mr. Kennedy urges us to follow the reasoning of the Eleventh Circuit in *Ross v. Kemp*, 785 F.2d 1467 (11th Cir. 1986), where the court recognized its "inherent equitable authority" to supplement the record on appeal to include material not before the district court. *Id*. at 1474-75. The *Ross* court set forth the following non-exclusive list of factors it would consider when deciding to supplement the record on appeal: 1) whether "acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issue;" 2) whether remand for the district court to consider the additional material would be contrary to the interests of justice and a waste of judicial resources; and 3) whether supplementation is warranted in light of the "unique powers that federal appellate judges have in the context of habeas corpus actions." *Id.* at 1475. The *Ross* court determined the movant had not established the first factor, and had not established the threshold issue of whether his failure to present the information before the district court was the result of excusable neglect. *Id*. at 1476. However, the *Ross* court concluded based on the

facts of that case, the interests of justice demanded remand to the district court to determine whether to allow Mr. Ross to supplement the record and if so, to determine whether an evidentiary hearing was warranted. *Id*. at 1477-79.[1]

We are not persuaded by Mr. Kennedy's argument. Although *Ross* is not controlling precedent in this circuit, we agree with the Eleventh Circuit that,

---

[1] In *Ross*, the movant (Mr. Ross) requested leave to supplement the record on appeal after the Eleventh Circuit had issued its opinion affirming the district court's denial of an evidentiary hearing on Mr. Ross' request for habeas relief and after the parties had filed their briefs on his motion for an en banc hearing. *Id*. at 1470, 1476, 1477. Mr. Ross claimed the jury was illegally composed – not representative of the community – and that his right to a fair trial was therefore compromised. *Id*. at 1469-70. In his motion to supplement the record on appeal, Mr. Ross presented an affidavit by a statistician showing the racial and sexual composition of the county where he was tried and comparing it to the jury lists for the years immediately preceding and following the year Mr. Ross was tried. *Id*. at 1467, 1472-73. The affidavit showed a significant discrepancy between the gender and racial composition of the population and the composition of the jury lists. *Id.* at 1473 & n.10. In considering whether to allow Mr. Ross to supplement the record on appeal, the court noted this was not the type of case where it would normally allow supplementation of the record on appeal, but listed the three factors set forth above it would consider when deciding whether to exercise its authority to allow supplementation of the record on appeal. *Id*. at 1475. The court went on to explain this was not an exclusive list of the factors to be considered, and indicated this issue is most appropriately determined on a case-by-case basis. *Id*. The court finally concluded, although Mr. Ross had failed to establish the proffered material "would establish beyond doubt he is entitled to a full evidentiary hearing," or the failure to present the evidence before the district court was not the result of inexcusable neglect, the interests of justice would best be served by remanding to the district court for an evidentiary hearing to determined the threshold question of whether his failure to present the evidence was due to inexcusable neglect. *Id*. at 1476-77.

under some circumstances, we have an inherent equitable power to supplement the record on appeal.  However, we conclude the present case is not one which would come under that rare exception to Rule 10(e), and is distinguishable from *Ross*.

The *Ross* court determined the interests of justice would best be served by remanding to the district court for an evidentiary hearing to determine the threshold question of whether Mr. Ross's failure to present the evidence before the district court was the result of inexcusable neglect. *Id*. at 1476-77.  The court reached this conclusion because it was concerned the "apparent negligence on the part of Ross' attorneys may have been due to their reliance on misrepresentations by the state official who had legal custody of the records." *Id*. at 1477.  The court also expressed its concern that the state officials refused to produce the other records and they were apparently inconsistent in disclosing jury lists to different attorneys in different cases. *Id*.  Finally, because it was reviewing a capital murder case, and due to the extremely serious nature of the constitutional error asserted and the fact the proffered evidence would "have a definite impact on [Mr. Ross'] ability to prove the illegal composition of his grand and traverse juries," the court decided to invoke its inherent authority and remanded to the district court for a hearing to resolve the threshold issue of inexcusable neglect.

*Id*. at 1477.

In the present case, however, there is no indication the government was lying to Mr. Kennedy's attorney concerning the location of records or was refusing to produce information. Furthermore, even if we were to conclude Mr. Danley's affidavit makes a stronger case for Mr. Kennedy's arguments concerning invasion of the attorney-client relationship, we could not conclude it "would establish beyond any doubt the proper resolution of the pending issue[s]." *See id.* at 1475. As discussed below, the main issue before us is whether Mr. Kennedy has made a sufficient showing of prejudice from the alleged intrusions to warrant an evidentiary hearing. Mr. Danley's affidavit does not remove our doubt concerning the existence of prejudice resulting from the alleged intrusions.[2] Consequently, we conclude the circumstances in the present case do not lead us to believe the interests of justice would best be served by exercising our inherent equitable power to allow Mr. Kennedy to supplement the record on appeal or by remanding the issue to the district court. For all the reasons stated above, we deny Mr. Kennedy's request to supplement the record on appeal to include Mr.

---

[2] In his affidavit, Mr. Danley accuses AUSA Peters of lying about the content of the government's interviews with Mr. Danley. However, we do not find these accusations sufficient to justify exercising our inherent authority to supplement the record on appeal to include this affidavit.

Danley's affidavit.

B.  Certificate of Appealability and Standard of Review

We next address the standard of review governing Mr. Kennedy's request for a certificate of appealability.[3]  Because Mr. Kennedy's request for a certificate of appealability was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), his right to appeal is governed by the AEDPA.  *See Slack v. McDaniel*, ___ U.S. ___, 120 S. Ct. 1595, 1603 (2000); *Tillman v. Cook*, 215 F.3d 1116, 1120 (10th Cir. 2000).

In order for this court to grant a certificate of appealability and proceed to

---

[3]  The district court did not rule on Mr. Kennedy's request for a certificate of appealability within thirty days after Mr. Kennedy filed his notice of appeal. Under our Emergency General Order of October 1, 1996, we deem the district court's failure to issue a certificate of appealability within thirty days after filing the notice of appeal as a denial of the certificate.  *See United States v. Riddick*, 104 F.3d 1239, 1241 n.2 (10th Cir. 1997), *overruled on other grounds*, *United States v. Kunzman*, 125 F.3d 1363 (10th Cir. 1997).  We note the district court ultimately granted Mr. Kennedy a certificate of appealability, but for reasons not evident in the record before us, that certificate did not issue until two months after Mr. Kennedy filed his notice of appeal.  Given the untimeliness of the district court's ruling, we construe this appeal as Mr. Kennedy's request to this court for a certificate of appealability.  *Cf. id.* (where the petitioner made no request for a certificate of appealability, we construed his appeal as a request for a certificate of appealability).

the merits of Mr. Kennedy's appeal, he must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In addressing the requirements of obtaining a certificate of appealability under § 2253(c), the Supreme Court recently stated the petitioner must show a substantial denial of a constitutional right by demonstrating "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack*,___ U.S. at ___, 120 S. Ct. at 1603-04 (quoting *Barefoot v. Estelle*, 463 U.S., 880, 893 and n.4 (1983)) (further quotation marks omitted). *See also Tillman*, 215 F.3d at 1120. A review of the record establishes Mr. Kennedy failed to make the requisite showing for a certificate of appealability. For the foregoing reasons, we deny Mr. Kennedy's request for a certificate of appealability and dismiss his appeal.

Keeping in mind the standard of review governing a request for a certificate of appealability, we note our standard of review over the district court's determination of a 28 U.S.C. § 2255 motion is clearly established. "[W]e review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error." *United States v. Pearce*, 146 F.3d 771, 774 (10th Cir. 1998); *accord United States v. Blackwell*, 127 F.3d 947, 950 (10th Cir. 1997). Under 28

U.S.C. § 2255, the district court is required to conduct an evidentiary hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996) (quotation marks and citation omitted). For the following reasons, we conclude the district court did not abuse its discretion by denying Mr. Kennedy's request for an evidentiary hearing.

C. Sixth Amendment Right to Counsel

Mr. Kennedy argues the district court erred by failing to grant him an evidentiary hearing to determine whether his right to effective counsel as guaranteed by the Sixth Amendment to the Constitution was compromised by the government's alleged invasion into his attorney-client relationship. Specifically, he contends the government used Mr. Danley as a source of information in its criminal prosecution of Mr. Kennedy in the case at issue.

Mr. Danley worked at Brown & McDonnell from June 1989 to October 1990. He then began to work for Mr. Kennedy and received his license to practice law in May 1991. Both parties admit there is a factual dispute concerning whether Mr. Danley acted in the capacity of an attorney for Mr. Kennedy after he began to work for Mr. Kennedy exclusively. However, Mr.

-13-

Danley had left Mr. Kennedy's employ by June 27, 1991. As mentioned above, the indictment was filed July 2, 1992. Mr. Kennedy admits some of the information he asserts Mr. Danley gave the prosecution was turned over before the indictment was issued. Government intrusions into pre-indictment attorney-client relationships do not implicate the Sixth Amendment. *See United States v. Lin Lyn Trading, Ltd.*, 149 F.3d 1112, 1117 (10th Cir. 1998); *United States v. Kingston*, 971 F.2d 481, 491 (10th Cir. 1992). Thus, Mr. Kennedy is not entitled to an evidentiary hearing to explore alleged intrusions that occurred before July 2, 1992.

Mr. Kennedy further contends, however, the prosecution invaded his attorney-client privilege by interviewing Mr. Danley after Mr. Kennedy was indicted. However, these interviews occurred after Mr. Danley had left Mr. Kennedy's employ. Consequently, there could have been no invasion of Mr. Kennedy's attorney-client relationship with Mr. Danley resulting from these interviews. *See United States v. Rogers*, 751 F.2d 1074, 1077-78 (9th Cir. 1985) (where defendant's former attorney divulged confidential information to the Internal Revenue Service during its pre-indictment investigation of the defendant, the court concluded the Sixth Amendment was not implicated, although the former attorney may have breached his ethical obligation of confidentiality).

-14-

Thus, we conclude the cases Mr. Kennedy cites in support of his Sixth

Amendment argument are inapplicable.[4]


D. Fifth Amendment Due Process Violation

In support of his request for an evidentiary hearing, Mr. Kennedy contends

the government's alleged intrusion into his attorney-client relationship with Mr.

Danley so infected the entire investigation and trial that his Fifth Amendment

right to due process was violated and he has suffered irreparable harm. While a

claim of a Sixth Amendment violation based on intrusion of attorney-client

privilege is limited to government action which interferes with legal

representation after the initiation of criminal proceedings, we acknowledge a

defendant may claim his or her rights under the Due Process Clause have been

violated by prosecutorial misconduct occurring prior to indictment.

---

[4] We also conclude Mr. Kennedy is not entitled to an evidentiary hearing on his Sixth Amendment claim because Mr. Kennedy has failed to show the prosecution obtained any material privileged information concerning the case at issue during the post-indictment meetings with Mr. Danley. The meeting Mr. Kennedy emphasizes most occurred in 1993, after the indictment. According to Mr. Danley's testimony in the Kuwait case, the purpose of this meeting was for Mr. Danley to locate ten pages of notes he had taken while working for Mr. Kennedy. Mr. Danley searched though ten file boxes, but was unable to locate these notes. Likewise, there is nothing in the record to indicate any of the subsequent meetings Mr. Danley had with members of the prosecution team yielded any privileged information concerning the Western case.

Misconduct by law enforcement officials in collecting incriminating evidence may rise to the level of a due process violation when the misconduct is outrageous enough to shock the conscience of the court. *Rochin v. California*, 342 U.S. 165, 172-74 (1952) (where police obtained evidence against the defendant by pumping his stomach, the Court determined the officers' actions offended the Due Process Clause). *See also United States v. Russell*, 411 U.S. 423, 431-32 (1973) (where the government supplied the defendant with materials to commit the crime and the defendant claimed governmental misconduct in violation of the Fifth Amendment, the Court stated there could be a situation where "the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction," but concluded the case before it was "not of that breed."). Other courts have concluded governmental misconduct in the form of a pre-indictment invasion of a defendant's attorney-client relationship may, under some circumstances, amount to a deprivation of the defendant's right to due process. *See United States v. Schell*, 775 F.2d 559, 562-63, 566 (4th Cir. 1985) (holding defendants' due process rights were violated when their attorney represented them during grand jury proceedings, and then participated in their prosecution after indictments were issued in the same matter), *cert. denied*, 475 U.S. 1098 (1986); *United States v. Marshank*, 777 F. Supp. 1507, 1521-23 (N.D. Cal. 1991)

(concluding pre-indictment intrusion into the attorney-client relationship was so pervasive and prejudicial as to warrant dismissal of the indictment where the defendant's attorney participated in the investigation of his client and the government knowingly assisted the attorney in violating the attorney-client privilege and hid the violation from the court). *But see Rogers*, 751 F.2d at 1076, 1078-80 (holding defendants' former attorney breached his ethical duties to his former clients by divulging confidential information to the IRS during its pre-indictment investigation of the defendants, but concluding no prejudice to the defendants resulted justifying the dismissal of the indictment and the government engaged in no misconduct by interviewing the defendants' former attorney).

In *United States v. Voigt*, 89 F.3d 1050 (3rd Cir.), *cert. denied*, 519 U.S. 1047 (1996), the court applied due process principles to a pre-indictment intrusion into the defendant's relationship with his attorney. *Id*. at 1066. In *Voigt*, the defendant contended the government had used his attorney as an undercover agent to gather privileged information as part of the government's investigation. *Id*. at 1061, 1064. The *Voigt* court held:

> in order to raise a colorable claim of outrageousness pertaining to alleged governmental intrusion into the attorney-client relationship, the defendant's submissions must demonstrate an issue of fact as to each of the three following elements: (1) the government's objective awareness of an ongoing, personal attorney-client relationship between its informant and the defendant; (2) deliberate intrusion into

that relationship; and (3) actual and substantial prejudice.

*Id.* at 1067. We consider the Third Circuit's test as set forth in *Voigt* to be a reasonable method of evaluating Fifth Amendment claims based on allegations of an invasion of the attorney-client relationship. We therefore adopt it as our own.

In the present case, the district court made no findings concerning the first two elements of the *Voigt* test. Rather, it concluded Mr. Kennedy had failed to show sufficient prejudice flowing from the alleged intrusions to warrant a new trial, the dismissal of the indictment, or an evidentiary hearing. In making this determination, the district court only discussed the evidence actually introduced at trial and the fact that Mr. Danley never testified at trial.[5] However, Mr.

---

[5] The district court relied upon our opinion in *Shillinger*, 70 F.3d at 1142-43, and the Supreme Court case of *United States v. Morrison*, 449 U.S. 361, 364-65 (1980), in determining Mr. Kennedy was not entitled to an evidentiary hearing on these claims. The court pointed out the only evidence introduced at trial which was derived from the alleged intrusion was the check used in the government's attempt to refresh Mr. Korpi's memory and thereby impeach his testimony. The court implicitly concluded any prejudice resulting from the use of this check was slight, not reaching the level of outrageousness necessary to sustain a claim for a violation of due process based on prosecutorial misconduct, because it was never admitted into evidence. The court also pointed out Mr. Danley never testified at trial, and concluded because any other information allegedly gathered by the government from Mr. Danley was not introduced at trial, Mr. Kennedy had failed to show he was entitled to relief based on his claims of Fifth and Sixth Amendment violations flowing from the alleged invasion of his attorney-client relationship. Although we agree with the district court's ultimate conclusion, we note the present case is distinguishable from *Shillinger* in that Mr. Kennedy is presenting a claim of prosecutorial misconduct flowing from invasion of his

Kennedy's Fifth Amendment claim focuses on the government's method of investigating its case against him. The district court should have considered not only the evidence admitted in this case, but also any information the government allegedly received from Mr. Danley during its investigation. *See Marshank*, 777 F. Supp. at 1521-23. Nevertheless, after examining all of the information Mr. Kennedy alleges the government discovered in violation of his attorney-client relationship, we conclude Mr. Kennedy has not made the requisite showing of prejudice to warrant an evidentiary hearing.[6] Under the *Voigt* test set forth above,

_____

relationship with his attorney during the investigative stage of the prosecution. *Shillinger* dealt with a Sixth Amendment claim, and seemingly limited the remedy of a new trial or the dismissal of an indictment only where "the evidence has been wrongfully admitted." *Shillinger*, 70 F.3d at 1143 (quoting *Morrison*, 449 U.S. at 365) (quotation marks omitted). However, the *Morrison* Court did not impose such a limitation on claims brought under the Fifth Amendment. *Morrison* involved a Sixth Amendment claim of pre-indictment intrusion in to the attorney-client relationship. 449 U.S. at 363. The *Morrison* Court distinguished cases alleging Fifth Amendment violations and pointed out in that case "[t]here [was] no claim [] of continuing prejudice which, because it could not be remedied by a new trial of suppression of evidence, called for more drastic treatment. *Id*. at 365-66 and n.2.

[6] Mr. Kennedy asserts his claims were supported in the record by: 1) a confidential attorney-client letter from his counsel which later surfaced in the prosecutor's files; 2) a photocopy of the check used to discredit Mr. Korpi; 3) the so-called "speculation" letter from Mr. Danley to Mr. Kennedy urging him to "stop speculating"; 4) information concerning potential prosecution and defense witnesses; 5) information that the prosecution had seized Western documents considered most important to Mr. Kennedy's defense team; 6) information concerning Mr. Kennedy's plans to repay Western's creditors; 7) information concerning a privately published novel about Mr. Kennedy which he alleges provided the prosecution with a "road map" for its case. Rather than expanding

the party asserting a Fifth Amendment violation must make a showing of all three elements. *Voigt*, 89 F.3d at 1067. Mr. Kennedy has not shown how the government's use of the allegedly privileged information "infected the trial to such an extent that it resulted in a fundamentally unfair trial." *Fox v. Ward*, 200 F.3d 1286, 1299 (10th Cir. 2000) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). Nor has he shown the prosecution's actions in interviewing Mr. Danley and gathering evidence from him during its investigation were sufficiently outrageous to support granting a new trial or dismissing the indictment. *See Morrison*, 449 U.S. at 365-67 and n.3. Consequently, we conclude the district court did not abuse its discretion by failing to grant Mr. Kennedy an evidentiary hearing.

---

this opinion to include an in-depth analysis of every piece of information Mr. Kennedy asserts the prosecution obtained through Mr. Danley, we assure the parties we have examined the record and conclude Mr. Kennedy has shown no prejudice resulting from the alleged intrusions into his relationship with Mr. Danley. Although the government may have a duty to rebut an assertion it obtained information in violation of the attorney-client privilege, *see Lin Lyn Trading, Ltd.*, 149 F. 3d at 1116, the burden remains on the petitioner in a § 2255 proceeding to show a deprivation of a constitutional right. 28 U.S.C. § 2253(c)(2). In light of all of the evidence offered against him in the seven week trial, Mr. Kennedy has not convinced us he was in any way prejudiced by the discovery of the allegedly privileged information. Thus, we need not address his argument concerning the government's failure to come forward with an explanation for how it received the information Mr. Kennedy claims came from his attorney.

E. Ineffective Assistance of Counsel

Finally, Mr. Kennedy contends the district court erred by failing to grant him an evidentiary hearing on the issue of ineffective assistance of counsel. Mr. Kennedy asserts:

> The question of whether attorney Lane should have moved to suppress all [Western]-related information divulged by [Mr.] Danley following its brief disclosure in Plaintiff's Hearing Exhibit Ten warrants a full evidentiary hearing on trial counsel's effectiveness in conducting an adequate investigation, or the reasonableness of his reliance on the prosecutor's assurances that Mr. Danley had nothing to do with the [Western] case.

(Footnotes and citations omitted.)

"A claim of ineffective assistance of counsel presents a mixed question of law and fact which we review de novo." *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998) (quotation marks and citation omitted). In order to obtain habeas relief for ineffective assistance of counsel, "a petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by that deficiency." *James v. Gibson*, 211 F.3d 543, 555 (10th Cir. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "An ineffective assistance claim may be resolved on either performance or prejudice grounds alone." *Fox*, 200 F.3d at 1295. In order to show prejudice, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "There is a strong presumption that counsel provided effective assistance, and a section 2255 defendant has the burden of proof to overcome that presumption." *United States v. Williams*, 948 F. Supp. 956, 960 (D. Kan. 1996), *cert. denied*, 522 U.S. 1033 (1997). In the present case, the district court determined Mr. Kennedy failed to show his counsel's assistance fell below an objective standard of reasonableness or that he was prejudiced by his counsel's performance. We agree.

As explained above, Mr. Kennedy has failed to show how his defense was prejudiced by the government's alleged possession of the information obtained through Mr. Danley. Thus, any failure on the part of his counsel to investigate further into the source of that evidence was harmless. Furthermore, Mr. Danley never testified, and the only evidence presented at trial which was obtained through him was the "Korpi" check. As explained above, this check was never entered into evidence. The prosecutor used it to refresh Mr. Korpi's memory in an attempt to impeach his testimony. We conclude this episode had little possibility of affecting the outcome of the trial. Therefore, Mr. Kennedy has failed to make the requisite showing he was prejudiced by his trial counsel's

failure to request suppression of all the evidence obtained through Mr. Danley. Thus, the district court did not err by determining Mr. Kennedy was not entitled to an evidentiary hearing on the issue of ineffective assistance of counsel.

We therefore **AFFIRM** the order of the district court denying Mr. Kennedy an evidentiary hearing and deny Mr. Kennedy a certificate of appealability. Appeal **DISMISSED**.