FILED
United States Court of Appeals
Tenth Circuit

July 14, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOSHUA JAMES ROBERTSON,

      Petitioner-Appellant,

v.

RAYMOND ROBERTS, Warden, El Dorado Correctional Facility; ATTORNEY GENERAL OF KANSAS,

      Respondents-Appellees.

No. 09-3345
(D. Kan)
(D.C. No. 5:09-CV-03077-KHV)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **MURPHY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

Joshua James Robertson, a Kansas state prisoner proceeding pro se,[1] seeks

a Certificate of Appealability ("COA") so that he may challenge the district

---

[*]This Order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

After examining the appellate record, this three-judge panel determined unanimously that oral argument would not be of material assistance in the determination of this matter. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case therefore is ordered submitted without oral argument.

[1]Because Mr. Robertson is proceeding pro se, we construe his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we conclude that Mr. Robertson has failed to make a substantial showing of the denial of a constitutional right. Accordingly, we **DENY** his request for a COA and **DISMISS** this matter. We also **DENY** all of Mr. Robertson's pending motions.

## BACKGROUND

Mr. Robertson was convicted in Kansas state court of first-degree murder, arson, and aggravated burglary in the killing of Patricia Self, his girlfriend's mother, and the burning of Mrs. Self's home. He was sentenced to 50 years' imprisonment, without the possibility of parole. His convictions were affirmed by the Supreme Court of Kansas on direct appeal. Mr. Robertson subsequently sought state post-conviction relief, which also was rejected by the Kansas courts.

Mr. Robertson thereafter filed a pro se § 2254 petition with the United States District Court for the District of Kansas. He asserted five claims: (1) his Fifth Amendment rights were violated by the admission at trial of his statements to law enforcement officials made without counsel present; (2) his trial counsel provided ineffective assistance by failing to investigate and seek suppression of his statements to law enforcement; (3) appellate counsel provided ineffective assistance by failing to pursue Fourth Amendment claims and by failing to assert an ineffective-assistance-of-trial-counsel claim on appeal; (4) he was denied a fair trial by the admission of a state witness's perjurious testimony; and (5) his Fourth

-2-

Amendment rights were violated by an unlawful seizure. Reviewing Mr. Robertson's petition under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the district court concluded that Mr. Robertson's claims regarding the admission of his statements to law enforcement officials and his ineffective-assistance-of-trial-counsel claim were reasonably resolved by the state courts. The district court also determined that Mr. Robertson's remaining claims were procedurally defaulted and that he had not shown cause and prejudice for the defaults or a fundamental miscarriage of justice arising from the defaults. Consequently, the district court did not consider those claims. Thus, the district court rejected all five of Mr. Robertson's claims and denied his § 2254 petition.

Seeking to appeal the district court's ruling, Mr. Robertson sought a COA from the district court, but the court denied his application. The court denied his request based on its conclusion that he had not made a substantial showing of the violation of a constitutional right. It held "that the state courts made reasonable factual determinations on the evidence presented and applied the correct legal standards. Petitioner has not presented any persuasive evidence to the contrary." R., Vol. I, at 294–95 (Order, filed Dec. 17, 2009). The district court did, however, grant Mr. Robertson permission to proceed on appeal *in forma pauperis*.

Mr. Robertson has filed a notice of appeal from the denial of his § 2254

petition, a brief in support,[2] and an application for a COA.  Mr. Robertson seeks a

COA from this court for the following issues:  (1) the voluntariness of his

statements to officers and the alleged violation of his Fifth Amendment rights; (2)

the alleged ineffectiveness of trial counsel; and (3) the alleged ineffectiveness of

appellate counsel.  Mr. Robertson also has seven pending motions before this

court that arise from his desire to obtain copies of evidence or his attempts to

supplement the record on appeal with certain evidence.[3]

---

[2]     Mr. Robertson actually filed two appellant briefs; he filed an
Appellant/Petitioner's Opening Brief on February 16, 2010, and a second
Appellant/Petitioner's Opening Brief on February 26, 2010.  Mr. Robertson
appears to have filed two briefs due to a delay in his receipt of our order granting
him more time in which to file his brief.  On February 11, 2010, Mr. Robertson
filed a motion requesting that we extend the time to file his brief.  We granted the
motion and extended the due date for Mr. Robertson's brief to March 19, 2010.
Mr. Robertson thereafter filed a brief on February 16, followed by a second brief
on February 26.  In the February 26 brief, Mr. Robertson stated that he filed the
February 16 brief "under duress" and that he did so *before* he had received the
order granting his motion for extension of time.  He stated that he was filing the
February 26 brief "pursuant to" that order.  Because under Federal Rule of
Appellate Procedure 28(a) and (c) we should not consider both briefs, we will
consider the February 26 brief as Mr. Robertson's appellant brief because it is
clear that he intended the second brief to replace the first.  Accordingly, we will
construe Mr. Robertson's statements to that effect as a motion to substitute briefs
and grant the motion. *See Robinson v. United States, Fed. Bureau of
Investigation*, 185 F. App'x 347, 347 (5th Cir. 2006) (per curiam) (construing a
letter as a motion to substitute briefs where a pro se inmate filed two appellate
briefs and submitted the letter asking the court to consider the second brief on
appeal).

[3]     Pursuant to 10th Cir. R. 22.1(B), the State Respondents-Appellees
did not file an answer brief.  However, at our direction, they did respond to one of
Mr. Robertson's motions, as discussed in detail *infra*.

**DISCUSSION**

**I.      Certificate of Appealability**

Unless an applicant obtains a COA, we lack jurisdiction to consider the merits of a habeas appeal.  28 U.S.C. § 2253(c)(1)(A).  We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* § 2253(c)(2).  To make such a showing, Mr. Robertson must "demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *accord Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000); *Allen v. Zavaras*, 568 F.3d 1197, 1199 (10th Cir. 2009).  In determining whether to grant a COA, we do not engage in a "full consideration of the factual or legal bases adduced in support of the claims."  *Miller-El*, 537 U.S. at 336.  Rather, we undertake "a preliminary, though not definitive, consideration of the [legal] framework" applicable to each claim.  *Id.* at 338.  Although an applicant is not required to demonstrate that his appeal will succeed, he "must prove something more than the absence of frivolity or the existence of mere good faith."  *Id.* (internal quotation marks omitted).

Moreover, because the Kansas state courts addressed the merits of Mr. Robertson's claims, "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of [his] . . . request for [a] COA."  *Dockins*

-5-

*v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Under AEDPA, we may grant an application for a writ of habeas corpus on behalf of a person in state custody on a claim that was adjudicated on the merits in state court only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). As we have explained:

> Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (alterations in original) (second internal quotation marks omitted). We grant relief under the "unreasonable application" clause "only if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (alteration in original) (internal quotation marks omitted). Thus, a federal court "may not issue a habeas writ simply because [that court] conclude[s] in [its] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also [have] be[en] unreasonable. *Id.* (internal quotation marks omitted). "Moreover, under §

-6-

2254(e)(1) a state-court['s] fact finding is binding on the federal courts unless rebutted by clear and convincing evidence." *Richie v. Workman*, 599 F.3d 1131, 1135 (10th Cir. 2010).

Having thoroughly reviewed the record on appeal, we conclude that Mr. Robertson is not entitled to a COA. All but one of the claims for which Mr. Robertson seeks a COA are subject to a procedural bar or were waived. As to the surviving claim, reasonable jurists would not disagree with the district court's disposition of that claim on its merits.

## A. Fifth Amendment Claims

Under a liberal construction of Mr. Robertson's pro se filings, it appears that he raises two Fifth Amendment claims. He argues that officers violated *Edwards v. Arizona*, 451 U.S. 477 (1981), and his Fifth Amendment right against self-incrimination by: (1) continuing to talk to him after he had stated that he wanted a lawyer; and (2) pressuring him to waive his *Miranda* rights.

Mr. Robertson's arguments may be best understood within the context of the relevant facts. As the Supreme Court of Kansas recounted:

> On the morning of the murder and fire, immediately upon being detained, Robertson asked Officer Reed if he was under arrest and if he could have a court-appointed lawyer. Reed had not given *Miranda* warnings to Robertson because he had not intended to question him; he was merely responsible for transporting him to the sheriff's department. Reed advised Robertson that he was not under arrest, that he was only being detained for questioning, and that he should talk to interviewing officers about getting a court-appointed attorney.

Robertson was placed in an interrogation room with an activated video recording device. Reed waited in the room with Robertson but did not question him. During a part of the time the two men waited for other investigators to arrive, emergency medical technicians treated Robertson's hand. Robertson made repeated remarks to Reed about his love for [his girlfriend] Jennifer and her motive for committing the crime. He asked Reed about the case and asked again if he would be appointed an attorney. Robertson also asked what the charges were and what the bond would be. Reed again responded that defendant would have to wait for the interviewing officers to find out more information and that he did not know if there were any charges. Defendant then asked Reed what the bond was for premeditated murder. Reed responded that he did not know.

When investigating officer Kelly Herzet arrived, Reed left. Reed did not tell Herzet that Robertson had requested a court-appointed attorney. Herzet also did not know that the remains had been or would be identified as Patricia.

Before Herzet could ask Robertson his name, Robertson said: "What's the motive? I tried to stop her. She cut my hand through my gloves. What was her motive?" Robertson asked again about a court-appointed attorney and said immediately that Jennifer had cut the phone line. Herzet interrupted defendant and asked his name, but defendant kept talking. Herzet then pulled out a form so that he could go over the *Miranda* rights with Robertson. Robertson told Herzet that he was not going to sign a waiver and that he wanted a lawyer present. Before Herzet could say anything, Robertson said that his girlfriend had "pulled some stunt" today, that he had gotten cut, and that he was "just an acquaintance, or an accomplice, I don't know." Herzet then said, "We need to talk about that," and Robertson said, "I can't speak until I have an attorney." Herzet responded: "OK."

Robertson then began talking again, remarking that he loved someone "so much." Herzet asked him who he was talking about, and Robertson said "Jennifer." Herzet then said he needed to read the rights form, which would protect

Robertson.  He also told Robertson that he could mark the form to document that he did not want to talk to law enforcement without an attorney.  Herzet specifically said that marking the form would not mean that Robertson had to talk to him.  Robertson continued talking despite his expressed intention to wait for an attorney.  He told Herzet that he had marked the form to say he would talk but "whether or not I decide to answer certain questions is my decision."  Herzet responded, "That is so correct."  The form had been signed within 5 minutes of Herzet arriving to talk to defendant.

Herzet then interviewed Robertson for approximately 4 hours.  The officer brought Robertson lunch, gave him a soda break, and gave him restroom breaks whenever Robertson needed to do so.  Herzet also asked Robertson several times if he needed to go to the hospital for further treatment of his hand, but defendant said he did not need to go.  Herzet testified later that Robertson never refused to talk.  Sometimes, he would state, "I'll take it up with the Judge," but Herzet understood that Robertson wanted to continue the interview.  Robertson ultimately described the crimes, claiming they were primarily Jennifer's fault.  He was then arrested.

. . . .

[Before trial,] Robertson moved to suppress his oral statements to Herzet . . . . The defense argued that Herzet should have walked away as soon as Robertson requested a lawyer without ever giving him the *Miranda* form. . . .

The district judge denied the motion to suppress.  The judge determined that Robertson was in custody at the time he was driven to the police station and that he had made repeated clear and unequivocal requests for an attorney.  However, in between those requests, Robertson repeatedly began to talk about the case again:  "In one breath, he would say I want a lawyer, in the next breath he would say I tried to stop her.  I cut my gloves.  She started the fire."  The judge also noted that the only person asking questions was Robertson.  Any confusion Herzet had about Robertson's intentions was therefore understandable, and he effectively gave the *Miranda*

warnings, including a clear statement that he would walk away if Robertson checked the appropriate box to say he did not want to talk. On these facts, the district judge found Robertson voluntarily and freely signed a waiver of his *Miranda* rights, and the interrogation by Herzet did not actually begin until then.

*State v. Robertson*, 109 P.3d 1174, 1180–82 (Kan. 2005).

### 1. Continued Conversation after Invocation of Right to Counsel

Mr. Robertson argues that the officers should have terminated their discussions with him immediately after he invoked his right to counsel. In particular, Mr. Robertson contends that the officers should not have discussed bail or the *Miranda* rights form but should have terminated the conversation with him that ultimately proved to be self-incriminating. On direct appeal, the Supreme Court of Kansas rejected this issue on its merits.[4] *See id.* at 1183–84. The court determined that if a suspect invokes his right to counsel, all questioning must cease. *Id.* However, the court noted that questioning could be resumed if the suspect "(1) initiated further discussions with police and (2) knowingly and intelligently waived the previously asserted right." *Id.* at 1184 (internal quotation marks omitted). Based on this legal framework, the court concluded that

> [u]nder the facts of this case, Robertson made repeated requests for a lawyer, and Herzet demonstrated by his

---

[4]     Because the Supreme Court of Kansas had addressed Mr. Robertson's argument concerning his statements to law enforcement on direct appeal, it did not reconsider the merits of this issue during his post-conviction proceedings. *See Robertson v. State*, 201 P.3d 691, 697 (Kan. 2009).

responses that he understood Robertson desired a lawyer's assistance. Although it was not completely clear that Robertson wanted a lawyer to be present for interrogation rather than later proceedings, we hold there was a valid waiver regardless.

As the district court recognized, before Herzet asked Robertson a single question about the crime, Robertson was blaming Jennifer and questioning her motive. Indeed, every time Robertson mentioned an attorney, he spontaneously reinitiated conversation with the officers about the crimes. Specifically, after Herzet was finally able to deliver the *Miranda* warnings, Robertson disclosed how he and Jennifer set the fire. This disclosure was not prompted by questioning from Herzet. Herzet then asked Robertson if he wanted to continue talking about the case. Robertson responded that he had signed the *Miranda* form and would speak with Herzet but might not answer all of his questions. He also advised Herzet that he had been arrested before and therefore understood his *Miranda* rights and his ability to waive them.

We conclude under the totality of the circumstances that the facts found by the trial court were supported by substantial competent evidence, and we arrive at the independent legal conclusion that Robertson's motion to suppress his statement to Herzet was properly denied.

*Id.*

The district court concluded that the Supreme Court of Kansas had reasonably applied clearly established federal law in resolving this claim. The district court reviewed the state court record, including the videotaped interview of Mr. Robertson. Based on that review, the district court agreed with the Supreme Court of Kansas that there were substantial facts to support the determination that Mr. Robertson voluntarily waived his right to remain silent

-11-

after being given repeated *Miranda* warnings. The district court also determined that the Supreme Court of Kansas reasonably applied established federal law to this claim.

We conclude that reasonable jurists could not debate whether the district court should have resolved this claim in a different manner because the Supreme Court of Kansas's determination was not contrary to, and did not involve an unreasonable application of, clearly established federal law. *Edwards* requires that, once a suspect has invoked his right to counsel, all interrogation of him must cease. 451 U.S. at 484–85. *Edwards* also provides, however, that interrogation may resume if "the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 485.

As an initial matter, this situation does not appear to fall under *Edwards* because no officer asked Mr. Robertson any questions until after he was read his *Miranda* rights and had signed a *Miranda* wavier indicating that he wished to speak to police without the presence of counsel. Therefore, no impermissible interrogation took place. Rather, the officers passively received the torrent of information emanating from Mr. Robertson. Neither *Edwards* nor any other Supreme Court case supports Mr. Robertson's contention that the officers were required to remove themselves from his presence immediately upon hearing his invocation of the right to counsel before they had even informed him of his *Miranda* rights.

Furthermore, even assuming that the officers' passive presence could qualify as "interrogation" and that *Edwards* applies, Mr. Robertson waived his right to counsel by repeatedly and spontaneously initiating discussions about bail and about his crimes after each invocation of the right to counsel. *See id.* at 485. The videotape demonstrates that, even as Mr. Robertson stated his desire for an attorney, with his next breath, he would reveal information about the crime and continue talking without any prompting from officers. The Supreme Court of Kansas said it best when it described Mr. Robertson's behavior as "virtually defin[ing] the old phrase, 'a compulsion to confess.'" *Robertson*, 109 P.3d at 1184. Reasonable jurists would not debate the district court's conclusion that Mr. Robertson's Fifth Amendment rights were not violated and, consequently, Mr. Robertson is not entitled to a COA on this claim.

### 2. **Pressure to Waive *Miranda* Rights**

Mr. Robertson next alleges that he asked for counsel and that an officer told him that having an attorney present was not possible because they did not have a lawyer "today" or "right now." Mr. Robertson maintains that those statements pressured him into signing a *Miranda* waiver and argues that the officer's use of the word "now" indicated to him that Mr. Robertson was required to talk at that particular time without an attorney present. This claim is procedurally barred.

Mr. Robertson failed to raise this particular argument on direct appeal.

-13-

Although Mr. Robertson consistently has argued that the statements he made to police were obtained in violation of his Fifth Amendment right to counsel, he did not make this specific argument on direct appeal. Rather, as discussed above, Mr. Robertson challenged only the interviewing officer's failure to discontinue all conversation with him after he had indicated his desire for an attorney. *See* Aplt. Br. at 10–17, *State v. Robertson*, 03-90319-S (Kan. Feb. 10, 2004); *see also Robertson*, 109 P.3d at 1182, 1184. Because Mr. Robertson did not raise this argument during his direct appeal, the claim is unexhausted and therefore is subject to an anticipatory state procedural bar. *See State v. Johnson*, 7 P.3d 294, 299 (Kan. 2000) ("[W]here an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and those issues that could have been presented, but were not presented, are deemed waived. Where a defendant's claim has not been raised at trial or on direct appeal, such a default prevents the defendant from raising the claim in a second appeal or a collateral proceeding."); *see also Cummings v. Sirmons*, 506 F.3d 1211, 1222–23 (10th Cir. 2007) (explaining anticipatory procedural bar).

It is not enough that Mr. Robertson raised another type of Fifth Amendment argument on direct appeal—"we have consistently turned down the argument that the raising of a related theory was sufficient." *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 722 (10th Cir. 1993); *see id.* (noting that "there are many ways in

-14-

which a case may present . . . issues not passed upon below," including "a situation where a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial" (internal quotation marks omitted)). We see no reason why this bar would not constitute an independent and adequate state-law ground for denying habeas relief. Moreover, although a procedural bar may be avoided by a habeas petitioner if "the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice," *Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008), *cert. denied*, 130 S. Ct. 238 (2009), Mr. Robertson has made no attempt to do so. Therefore, this claim is procedurally barred, and Mr. Robertson is not entitled to a COA on this issue.

**B.     Ineffective-Assistance-of-Trial-Counsel Claim**

Mr. Robertson also seeks a COA for his claim that trial counsel was ineffective. Although our reasoning differs from the district court, we conclude, like that court, that Mr. Robertson cannot prevail on this claim. More specifically, we determine that Mr. Robertson's claim is procedurally barred.

In his state post-conviction proceedings, Mr. Robertson identified several reasons that his trial counsel was ineffective. *See Robertson,* 201 P.3d at 697. Among other reasons, Mr. Robertson claimed that his trial counsel failed to seek a competency evaluation of him and failed to raise a Fourth Amendment argument. *Id.* The district court determined that Mr. Robertson raised both of these challenges in his federal habeas petition. Although the district court rejected both

challenges because "trial counsel [had] provided effective assistance," R., Vol. I, at 249 (Mem. & Order, filed Nov. 23, 2009), it only expressly discussed the competency issue in its AEDPA analysis. Specifically, the district court noted that the Supreme Court of Kansas had rejected this claim on its merits because counsel had filed a motion for a competency determination early in the proceedings and Mr. Robertson had been found to be competent. Likewise, trial counsel pursued the issue of competency in a pretrial motion to suppress. The district court held that "[t]hese findings are supported by the record, and the Kansas Supreme Court applied the correct legal standards." *Id.* Thus, the district court held that "Petitioner's claim of ineffective assistance lacks merit." *Id.*

We disagree, however, with the district court's precise handling of the ineffective-assistance-of-trial-counsel claim. Although the district court placed the analytic focus on a purported competency challenge, even under our liberal construction of Mr. Robertson's federal habeas filings, we can discern only an ineffectiveness argument concerning trial counsel's failure to raise a Fourth Amendment challenge. In other words, Mr. Robertson did not raise before the district court an ineffective-assistance-of-trial-counsel challenge based upon competency. Consequently, Mr. Robertson has waived any federal judicial consideration of his competency challenge. *See Fairchild v. Workman*, 579 F.3d 1134, 1141 n.2 (10th Cir. 2009) ("Generally, the failure to raise an argument in one's initial filing will cause it to be waived."). However, we conclude that

reasonable jurists could not debate the correctness of the district court's ultimate disposition of Mr. Robertson's ineffective-assistance-of-trial-counsel claim—*viz.*, it is beyond dispute that Mr. Robertson cannot prevail on this claim.

Restricted to the Fourth Amendment challenge, this ineffective-assistance-of-trial-counsel claim is procedurally barred because the Supreme Court of Kansas found that Mr. Robertson did not brief the issue. *See Robertson*, 201 P.3d at 697 ("Robertson's other initial criticisms of trial counsel—that counsel . . . was ineffective for failing to raise a Fourth Amendment argument—were abandoned when the Court of Appeals brief was submitted in this case."). Kansas courts hold that "[a]n issue not briefed by the appellant is deemed waived or abandoned," *Milano's, Inc. v. Kan. Dep't of Labor*, 231 P.3d 1072, 1077 (Kan. 2010), and we see no reason not to consider this default an independent and adequate state law ground for denying habeas relief.

> Claims that are defaulted in state court on adequate and independent state procedural grounds will not be considered by a habeas court, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. A state procedural default is 'independent' if it relies on state law, rather than federal law. A state procedural default is 'adequate' if it is firmly established and regularly followed.

*Smith*, 550 F.3d at 1274 (citations omitted). Mr. Robertson has not demonstrated cause and prejudice or that a fundamental miscarriage of justice will occur if this claim is not reviewed. *See Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001). We therefore will not grant a COA on this claim.

-17-

## C.    Ineffectiveness-of-Appellate-Counsel Claim

Finally, Mr. Robertson seeks a COA for his claim that appellate counsel was ineffective for failing to raise a Fourth Amendment argument.  Mr. Robertson waived this claim, having failed to adequately brief the issue in seeking a COA from this court.  He does not discuss appellate counsel's performance anywhere in his Appellant/Petitioner's Opening Brief.  Although Mr. Robertson mentions appellate counsel once, on page two of his Application for a COA, he never actually discusses that claim; rather, he only discusses the effectiveness of *trial* counsel.  Despite his pro se status, Mr. Robertson made no attempt to adequately brief this claim and we decline to address it.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir.1998)  ("Arguments inadequately briefed in the opening brief are waived[.]").[5]

## II.    Pending Motions

Although we have determined that Mr. Robertson is not entitled to a COA

---

[5]    Even if we were to reach this claim, Mr. Robertson has not demonstrated "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 478.  The district court correctly held that the Supreme Court of Kansas's determination that Mr. Robertson had not preserved his argument that appellate counsel was ineffective was an independent and adequate state-law ground barring federal review. *See Robertson*, 201 P.3d at 697 (holding that Mr. Robertson's claim regarding the alleged ineffectiveness of appellate counsel was abandoned when his Court of Appeals brief was filed and declining to address that claim on its merits).  And, once again, Mr. Robertson has not demonstrated cause and prejudice or that a fundamental miscarriage of justice will occur if this claim is not reviewed.  Mr. Robertson therefore is not entitled to a COA on this issue.

on any of his claims, Mr. Robertson also has filed seven pending motions in this matter that have been referred to the merits panel and require our resolution. The motions are denied for the following reasons.

First, on December 28, 2009, Mr. Robertson filed a "Freedom of Information Act Request (Pursuant to 5 U.S.C. 522 et seq)" in which he requested that we make available for inspection and copying the videotape of his police interview that was viewed by the district court. We directed the Respondents-Appellees to respond to this motion and have considered their response. We deny this motion because "the Freedom of Information Act makes information available to the public. It does not apply to the courts of the United States." *Cook v. Willingham*, 400 F.2d 885, 885 (10th Cir. 1968) (per curiam) (internal quotation marks omitted).

Second, on January 11, 2010, Mr. Robertson filed a "Motion for Examination of the Record" in which he expressed his concern that the district court had reviewed an edited version of the videotape. Mr. Robertson claims that the videotape, originally marked as Exhibit 3 at trial, was later redacted to omit information about his juvenile conviction. He also claims that the videotape may have been edited to the extent that it omits important information about the voluntariness of his statements to police and waiver of his right to counsel. He alleges that we have the edited version of the videotape, which was introduced at trial as State's Exhibit 89. This belief has led to Mr. Robertson's concern for

preservation of the record and his repeated requests for a transcript to be made of the videotape. Consequently, he requests that we order the Butler County Sheriff's Office to make a copy of the original videotape. We decline to do so.

Based on Mr. Robertson's allegations, we appear to have the same copy of the videotape that was before the Supreme Court of Kansas and the district court. Under Federal Rule of Appellate Procedure 10(a)(1), the record on appeal consists of the original papers and exhibits filed in the district court. We generally do not consider evidence that was not presented to the district court. *See United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000); *see also Hammon v. Ward*, 466 F.3d 919, 931 n.12 (10th Cir. 2006). Although we recognized in *Kennedy* that we have the inherent equitable authority to enlarge the record on appeal if "the interests of justice would best be served," 225 F.3d at 1192–93, Mr. Robertson cannot meet that standard in this case because: (1) our review of the district court's evaluation of the Supreme Court of Kansas's handling of this claim should involve the same copy of the videotape reviewed by those courts; (2) Mr. Robertson fails to support his assertion that the copy of the videotape that is part of the record on appeal has been edited in a way so as to omit relevant, substantive information; (3) defense counsel did not object to the admission of Exhibit 89 (the edited videotape) at trial, *see* Tr. of Jury Trial, Vol. V, at 103–04, *State v. Robertson*, No. 02-cr-104 (Kan. Dist. Ct. Sept. 13, 2002); and (4) Mr. Robertson did not raise this issue before the district court.

Third, Mr. Robertson filed several motions that involve his attempt to supplement the record on appeal with a DVD copy of Exhibit 3 and a transcript he has had made of that copy. In Mr. Robertson's "Motion to Submit," filed on February 18, 2010, he reveals that his mother has obtained a copy of Exhibit 3—the allegedly unedited copy of the videotaped interview—from the Butler County District Court Clerk's Office. Mr. Robertson asks that we allow him to supplement the record with a DVD copy of the videotape and a transcript. Attached to the motion is a letter from Judge Ward of the Butler County District Court to Mr. Robertson, giving Mrs. Robertson permission to obtain and copy the tape. Also attached is an affidavit from Mrs. Robertson detailing the "chain of custody" as to the copy of the tape and its transcription. Similarly, in a "Motion to Accept Hand Delivery of a DVD Copy of Exhibit 3 and Transcript of Exhibit 3," filed on February 19, 2010, Mr. Robertson requests that we accept the copies that his mother will hand-deliver. He again asks that he be permitted to supplement the record in his "Motion to Supplement the Record," filed on February 22, 2010, and states that, because the Appellees did not object to his obtaining a copy of Exhibit 3 in their response to his FOIA motion, they therefore must not object to his supplementing the record.

We deny these motions for the same reasons we deny Mr. Robertson's "Motion for Examination of the Record," discussed above. In addition, we will not permit Mr. Robertson to supplement the record with uncertified copies of

evidence.  *Cf.* Fed. R. App. P. 10(e)(2) (stating that an omission or misstatement of anything material from the record "may be corrected and a supplemental record may be certified and forwarded"); *Habteselassie v. Novak*, 209 F.3d 1208, 1209 n.1 (10th Cir. 2000) (granting motion to supplement the record "[i]n view of the fact that [the Appellant] does not object to the motion and that the Clerk for the Araphaoe County District Court certified the copies of these documents").

Mr. Robertson's final two motions involve the *Miranda* waiver form that he signed during his police interview.  It is not part of the record on appeal, and his mother has been working on his behalf to obtain the form.  In a "Motion to Supplement the Record on Stipulation of the Parties (Pursuant to Fed Rules of App Proc R 10(e)(2)(A))," filed on March 22, 2010, Mr. Robertson argues that we should consider the questions on the *Miranda* form.  He attaches an affidavit from his mother regarding her efforts to locate the form and a letter from trial counsel stating that he does not have a copy of the form.  Mr. Robertson requests that we supplement the record by stipulation of the parties, but he does not attach a copy of the form to his motion.  Moreover, it is unclear whether the Respondents-Appellees actually have stipulated to the motion.  In a second "Motion to Supplement the Record (Pursuant to Federal Rules of Appellate Procedure R 10(e)(2))," filed on April 2, 2010, Mr. Robertson asks to supplement the record and this time includes a copy of the *Miranda* rights form that he signed.  We deny both motions because:  (1) the actual *Miranda* form is immaterial to our review of

-22-

Mr. Robertson's claims; (2) it is not clear that this form was before either the Supreme Court of Kansas or the district court; and (3) Mr. Robertson has failed to provide us with a certified copy of the form, *cf.* Fed. R. App. P. 10(e)(2); *Habteselassie*, 209 F.3d at 1209 n.1.

## CONCLUSION

For the reasons discussed above, we deny the application for a COA and dismiss this matter because Mr. Robertson failed to make a substantial showing of the denial of a constitutional right.  We also deny his pending motions.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge